**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

DEBRA NELSON,               )      Case No. 2:25-cv-00405-RMG-MGB
                       )
        Plaintiff,    )
                       )
   v.                   )
                       )      **REPORT AND RECOMMENDATION**
CURTISS WRIGHT ELECTRO   )
MECHANICAL CORP. d/b/a Curtiss- )
Wright Steam and Air Solutions,  )
STEPHANIE LANIER, and SHANE )
SABLOTSKY,              )
                       )
        Defendants.  )
                       )

Plaintiff, originally represented by counsel, filed this employment discrimination action in state court. (Dkt. No. 1-1.) Defendants removed the case to federal court on January 21, 2025. (Dkt. No. 1.) Shortly thereafter, Plaintiff's counsel moved to be relieved as counsel. (Dkt. No. 12.) On February 20, 2025, the Court granted counsel's motion. (Dkt. No. 19.) Plaintiff is now proceeding *pro se*. This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.

With leave of the court, Plaintiff filed a Fourth Amended Complaint on August 27, 2025. (Dkt. No. 79.) Presently before the Court for disposition is a Partial Motion to Dismiss filed by Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 93.) Because Plaintiff is proceeding *pro se*, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), providing an explanation of the dismissal procedures and the consequences of not responding. (Dkt. No. 96.) Thereafter, Plaintiff filed a Response in Opposition to the Motion, (Dkt. No. 98), and a Supplement to her Response, (Dkt. No. 110). Defendants filed

1

a Reply. (Dkt. No. 113.) Accordingly, the motion before the Court has been fully briefed and is ripe for disposition.

## PLAINTIFF'S ALLEGATIONS

Accepting the truth of the allegations in Plaintiff's Amended Complaint and viewing all inferences in the light most favorable to Plaintiff, *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the facts, for purposes of ruling on the Motion to Dismiss, are as follows.

Plaintiff alleges that she is an African American female residing in South Carolina. (Dkt. No. 79 at ¶¶ 30–31.) In April 2022, Defendant Curtiss Wright Electro Mechanical Corp., doing business as Curtiss-Wright Steam and Air Solutions (hereinafter "Curtiss-Wright"), hired Plaintiff as an NDT technician. (*Id.* at ¶ 32.) Plaintiff was considered a good employee until she first complained about differential treatment. (*Id.* at ¶ 33.)

In November 2022, Plaintiff filed a complaint asserting that an Executive Assistant was harassing her. (*Id.* at ¶ 34.) Plaintiff alleges that nothing was done regarding the incident, but her work environment became substantially different. (*Id.* at ¶ 35.)

On May 4, 2023, Plaintiff filed a complaint with the Office of the Naval Inspector General. (*Id.* at ¶ 36.) The Hotline and Investigations Division informed Plaintiff that if she wanted to pursue her claims, she would need to provide specific details and complete the Navy Hotline Complaint Form. (*Id.*)

On May 19, 2023, Plaintiff was conducting a Magnetic Particle Test on large diaphragms (a turbine component) with Joseph Couillard. (*Id.* at ¶ 37.) In the middle of the test, Brian Fogarty[1]

---

[1]    The Fourth Amended Complaint references "Brian Fogerty." (Dkt. No. 79.) However, subsequent filings indicate that the proper spelling of this name is "Brian Fogarty." (*See, e.g.*, Dkt. No. 242.) For purposes of clarity, the undersigned has used the proper spelling of Mr. Fogarty's name throughout this Report and Recommendation.

arrived and began to scream at Plaintiff and "violently point his finger" at her. (*Id.*) Fogarty continued to yell and scream at Plaintiff for several minutes, and Plaintiff backed away from Fogarty, shocked at his behavior. (*Id.*) When Fogarty finished his tirade, Plaintiff informed him that she would tell Joe Cabaup, NDT Level III Manager, about the incident. (*Id.*) Fogarty stated, "Good," and stomped out. (*Id.*) Plaintiff reported Fogarty's behavior to management and Human Resources, but nothing was done to Fogarty. (*Id.* at ¶ 38.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2023, alleging workplace harassment, sex discrimination, and race discrimination based on the May 19, 2023 incident with Fogarty. (*Id.* at ¶ 39.) Plaintiff alleges that the EEOC issued the right to sue regarding this charge on June 5, 2023, but she did not file a cause of action with the Court for fear of retaliation. (*Id.* at ¶ 40.)

On June 20, 2023, Plaintiff sent a letter to the CEO of Curtiss-Wright, Lynn M. Bamford, regarding the treatment of African-American women at the Summerville facility. (*Id.* at ¶ 41.) Plaintiff contacted CEO Bamford again on June 28, 2023, specifically stating that Plaintiff was being subjected to wage discrimination, discrimination based on sex, favoritism, ageism, bullying, harassment, and a hostile work environment. (*Id.* at ¶ 42.) Plaintiff stated that there was a culture of abusive and aggressive behaviors towards women that was not being addressed and that violated Curtiss-Wright's own policies. (*Id.*) Plaintiff informed CEO Bamford that incidents involving bullying, harassment, hostile work environment, and discrimination had been reported to Defendant Stephanie Lanier ("Defendant Lanier") in Human Resources, but there had been no investigation, determination, or resolution. (*Id.*)

On July 12, 2023, Plaintiff reported to Defendant Lanier in Human Resources that Patrick Ingram was not fulfilling his duties as one of the NDT Techs, including failing to perform his daily

inspections. (*Id.* at ¶ 43.) Plaintiff complained of "blatant and continuous favoritism" shown to Ingram since July 2022. (*Id.*) On July 14, 2023, Defendant Lanier falsified a disciplinary action report by stating that she had given it to Plaintiff. (*Id.* at ¶ 44.)

On July 20, 2023, Defendant Lanier informed Plaintiff that Fogarty was giving Plaintiff feedback, not bullying her. (*Id.* at ¶ 45.) On July 25, 2023, Plaintiff was required to attend a meeting with Defendant Lanier, Mary Workoff, and Antonio Coleman regarding bullying, discrimination, and favoritism. (*Id.* at ¶ 46.) Workoff and Lanier informed Plaintiff that the bullying incident with Fogarty had been handled, though it may not have been what Plaintiff wanted. Plaintiff asked how many chances a person had to bully someone, and Lanier responded, "It depends." (*Id.*)

On July 27, 2023, Plaintiff emailed Coleman and Defendant Lanier, stating that the accusation that she had bullied Ingram was a clear example of favoritism and discrimination based on race. (*Id.* at ¶ 47.) She also complained that Fogarty's bullying and hostile work environment were not "constructive feedback." (*Id.*)

On July 31, 2023, Plaintiff received an email from Vice President/General Counsel/Corporate Secretary Paul Ferdenzi, stating that CEO Bamford had forwarded Plaintiff's complaint to him for handling and that an independent investigation would be performed on her claims. (*Id.* at ¶ 48.) On August 7, 2023, Plaintiff informed Ferdenzi that she had sent the materials to him regarding her complaint a month ago and that she was contacting news outlets. (*Id.* at ¶ 49.) Ferdenzi responded, "Please feel free to do whatever you believe is best for you. If you are telling me these things to influence our investigation, it won't work. We will conduct an independent an[d] objective review of your concerns and then let you know what we determine." (*Id.*)

On August 10, 2023, Plaintiff filed a complaint with the Naval Inspector General (NAVINSGEN). (*Id.* at ¶ 50.) The complaint asserted that Fogarty had violated policies regarding

bullying based on sex and that Curtiss-Wright refused to address any of her complaints to managers or Human Resources. (*Id*.) Plaintiff also asserted that Defendant Curtiss-Wright covered up all incidents and complaints. (*Id*.)

On August 26, 2023, Plaintiff filed another complaint with NAVINGSGEN. (*Id.* at ¶ 51.) This complaint addressed Fogarty's treatment of women and asserted that Curtiss-Wright's investigation into her complaints had taken over three months and nothing had been done. (*Id*.) She specifically complained as follows: "There is a culture of abusive behavior towards women. There is no one holding perpetrators accountable for their actions even when there are complaints filed. Management is too concerned with protecting their friends and not following laws and their own code of conduct." (*Id*.) Plaintiff informed NAVINSGEN that she was being retaliated against, that she had filed complaints with the EEOC, and that the EEOC had informed her that there was not enough evidence to go forward with a charge of discrimination. (*Id*.)

On September 18, 2023, Curtiss-Wright fired Mary Workoff, the plant manager at the Summerville, SC facility. (*Id.* at ¶ 52.) Plaintiff's timecard was altered for September 26–29, 2023. (*Id.* at ¶ 53.)

On September 26, 2023, Plaintiff filed a formal complaint with Human Resources EthicsPoint for Curtiss-Wright. (*Id.* at ¶ 54.) Plaintiff complained that she was being blocked from printing due to the fact that she was using emails to report Defendant Curtiss-Wright to the Department of the Navy. (*Id*.) Plaintiff complained that Defendant Lanier harassed and bullied Plaintiff, failed to treat Plaintiff with respect, and disciplined Plaintiff in retaliation for Plaintiff's complaints to the EEOC, the Department of the Navy, and the Inspector General. (*Id*.)

On September 28, 2023, Plaintiff filed another complaint with NAVINGSGEN alleging that she was being subjected to retaliation and hostile work environment and that she had been verbally counseled and threatened with termination. (*Id.* at ¶ 55.)

Plaintiff filed a second charge of discrimination with the EEOC on October 5, 2023. (*Id.* at ¶ 56.) This second charge alleged that she was subjected to workplace harassment on May 19, 2023, when Fogarty yelled at her and repeatedly waved his finger in her face after becoming upset at her for not checking the QPC Code. (*Id.*) The second charge further alleged that after Plaintiff filed a complaint of discrimination, she was subjected to retaliation when her printing capabilities were disabled multiple times and when her work hours were adjusted without her knowledge. (*Id.*) Plaintiff alleged discrimination based on sex and race. (*Id.*) The EEOC issued a right to sue regarding Plaintiff's second charge on October 6, 2023. (*Id.* at ¶ 57.)

On October 16, 2023, Plaintiff learned that her Ethics complaint was determined to be without merit. (*Id.* at ¶ 58.)

On November 7, 2023, Plaintiff filed another complaint with NAVINSGEN and the Department of Labor's Office of Federal Contract Complaint (OFCCP) regarding her work environment and retaliation, specifically stating that her time was being tampered with; that Curtiss-Wright was not giving her the practical exam she needed to become certified, which negatively impacted her pay; that male employees were being paid more per hour; and that Curtiss-Wright was failing to convert certain individuals from contract to direct employees. (*Id.* at ¶¶ 59, 67–68.)

On November 14, 2023, Plaintiff received a final written warning. (*Id.* at ¶ 60.) Plaintiff went to HR and accused Defendant Lanier of lying on Plaintiff's disciplinary action. (*Id.*) "In order to not appear threatening, . . . Plaintiff immediately backed away from [Defendant] Lanier's desk

and did not make any statements but sat in a chair several feet away from Lanier." (*Id.*) However, Defendant Lanier later lied when she told others that Plaintiff had stood over her and been threatening. (*Id.*) As a result, Plaintiff was suspended for alleged abusive and unprofessional behavior, even though Fogarty had not been suspended for his behavior towards Plaintiff in May. (*Id.*)

On November 15, 2023, a co-worker told Plaintiff that Defendant Shane Sablotsky and others were telling employees that Plaintiff had been suspended because she was combative and threw water on a computer during a meeting. (*Id.* at ¶ 61.)

On November 20, 2023, Defendant Lanier sent Plaintiff an email informing her that if she wanted her personal items from her locker, Defendant Lanier would mail them to her. (*Id.* at ¶ 62.)

On December 1, 2023, Plaintiff left a voicemail for April James in Human Resources, inquiring about the status of her suspension. (*Id.* at ¶ 65.) Plaintiff subsequently received a letter dated November 21, 2023, informing her that she had been terminated effective November 21, 2023. (*Id.* at ¶¶ 63, 66.) Plaintiff was replaced by a Caucasian male. (*Id.* at ¶ 78.)

On December 14, 2023, Plaintiff learned that the complaint she had filed with the OFCCP on November 7, 2023, had been transferred to the EEOC for investigation. (*Id.* at ¶¶ 67–68.) Plaintiff contacted the EEOC in January 2024 to find out the status of this complaint, but she did not receive a response. (*Id.* at ¶¶ 23–24.)

Plaintiff alleges that, in early 2024 and into 2025, Plaintiff experienced repeated cyber-intrusions and physical surveillance as follows:

- Her personal devices displayed unauthorized log-in attempts, corrupted files, and system override messages after she pursued her complaints.

- While on mandatory work travel in Yuma, Arizona in April of 2024, Plaintiff was followed by an unknown woman; later confirmed on hotel surveillance, which Plaintiff reported to hotel management.

- On April 22, 2025, her personal vehicle's infotainment system played unsolicited audio and broadcast her private calls without consent.

(*Id.* at ¶ 99.) Plaintiff alleges that "Defendants were aware of Plaintiff's protected disclosures yet took no steps to halt the hacking or surveillance and instead coordinated adverse actions culminating in her termination." (*Id.* at ¶ 100.)

On May 2, 2024, Plaintiff filed her third charge of discrimination with the EEOC, alleging retaliation and race and sex discrimination from December 6, 2022, through November 21, 2023. (*Id.* at ¶¶ 25–26.) The EEOC issued its right to sue to Plaintiff on November 19, 2024. (*Id.* at ¶ 28.) Plaintiff filed her initial Complaint in this civil action on December 17, 2024. (Dkt. No. 1.)

## LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of [affirmative] defenses."). Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, a court is required to evaluate the complaint in its entirety, accept the factual allegations in the pleading as true, and draw all reasonable factual inferences in favor of the party opposing the motion. *Kolon Indus., Inc.*, 637 F.3d at 440, 448. Moreover, a court must evaluate "the complaint in its entirety, as well as documents attached or incorporated into the complaint." *Id.* at 448. A court may consider a document not attached to the complaint, so long as the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id.* (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "A complaint should not be dismissed as long as it provides sufficient detail about the claim to show that the plaintiff has a more-than-conceivable chance of success on the merits." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015) (internal quotation marks omitted).

*Pro se* filings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (citation omitted); *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (noting "we are obliged to construe [a complaint's] allegations liberally and with the intent of doing justice"). However, principles requiring generous construction of *pro se* complaints do "not require courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Giving liberal construction does not mean that a court can ignore a *pro se* plaintiff's clear failure to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate.").

## DISCUSSION

Plaintiff asserts fourteen causes of action in her Fourth Amended Complaint: (1) a claim against all Defendants for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981; (2) a claim against all Defendants for sex discrimination in violation of Title VII; (3) a claim against all Defendants for age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"); (4) a claim against Defendant Curtiss-Wright for hostile work environment in violation of Title VII; (5) a claim against all Defendants for retaliation in violation of Title VII and the ADEA; (6) a claim against Defendants Lanier and Sablostsky (collectively, the "Individual Defendants") for slander; (7) a claim against the Individual Defendants for tortious interference with a contract; (8) a claim against all Defendants for whistleblower retaliation, in violation of 41 U.S.C. § 4712 and 31 U.S.C. § 3730(h); (9) a claim against Defendant Curtiss-Wright for violation of Title VI, 42 U.S.C. § 2000d; (10) a claim against all Defendants for invasion of privacy; (11) a claim against all Defendants for illegal interception of communications in violation of the Federal Wiretap Act, 18 U.S.C. § 2511; (12) a claim against all Defendants for intentional infliction of emotional distress; (13) a claim against all Defendants for breach of contract; and (14) a claim against all Defendants for civil conspiracy. (Dkt. No. 79.)

Defendants move for partial dismissal of Plaintiff's Fourth Amended Complaint. (Dkt. No. No. 93.) Specifically, they move to dismiss the following claims in their entirety: (a) the Third Cause of Action for age discrimination in violation of the ADEA; (b) the Fourth Cause of Action for hostile work environment in violation of Title VII and the ADEA; (c) the Sixth Cause of Action for slander; (d) the Seventh Cause of Action for tortious interference; (e) the Ninth Cause of Action for Title VI violation; and (f) the Thirteenth Cause of action for breach of contract. (*Id*. at 1.) Defendants also move to dismiss portions of Plaintiff's First, Second, and Fifth Causes of Action,

to the extent those claims rely on allegations from Plaintiff's first two EEOC charges after which Plaintiff failed to timely file suit.[2] (*Id.* at 1–2.) Plaintiff opposes Defendants' motion. (Dkt. Nos. 98, 110.)

For the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' Partial Motion to Dismiss (Dkt. No. 93) should be **GRANTED IN PART AND DENIED IN PART**. More specifically, the undersigned **RECOMMENDS** that Plaintiff's state law claim for breach of contract should be **DISMISSED**, but all other claims should **SURVIVE**.

## I.        Timeliness of Title VII and ADEA Claims

Defendants first assert that Plaintiff's ADEA claims should be dismissed as untimely, as should Plaintiff's Title VII hostile work environment claim and portions of Plaintiff's Title VII discrimination and retaliation claims. (Dkt. No. 93-1 at 6–11.) Plaintiff disagrees. (Dkt. No. 98 at 2–3; Dkt. No. 110 at 2–4.)

Before filing a Title VII or ADEA claim, a plaintiff must exhaust his or her administrative remedies by bringing a charge with the EEOC or, in a "deferral" jurisdiction such as South Carolina, with an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred." 42 U.S.C. §§ 2000e–5(e)(1), 2000e–5(f)(1); 29 U.S.C. § 626(d). Under Title VII and the ADEA, there are "two possible limitation periods for filing a discrimination charge: 'the basic limitations period is 180 days after the alleged unlawful employment practice but can be extended to 300 days in a deferral state if state law proscribes the alleged employment practice and the charge is first filed with a state deferral agency.'" *Marquez*

---

[2]        Plaintiff's federal claims for discrimination in violation of 42 U.S.C. § 1981, whistleblower retaliation in violation of 41 U.S.C. § 4712 and 31 U.S.C. § 3730(h), and illegal interception of communications in violation of 18 U.S.C. § 2511 are not at issue in Defendants' Partial Motion to Dismiss, nor are Plaintiff's state law claims for invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. (*See generally* Dkt. Nos. 79, 93.) As such, these claims remain pending.

*v. Winn Mgmt. Grp., LLC*, No. 9:23-cv-05045-RMG-MHC, 2024 WL 1251423, at *2 (D.S.C. Mar. 5, 2024) (quoting *Gerald v. Olsten*, No. 4:20-cv-2555-CMC-KDW, 2021 WL 1394669, at *2 (D.S.C. Feb. 9, 2021) (cleaned up), *adopted*, 2021 WL 960509 (D.S.C. Mar. 15, 2021)), *adopted*, 2024 WL 1251318 (D.S.C. Mar. 22, 2024).

After bringing a charge with the EEOC, the claimant must then file a civil action within ninety days of the date of his or her receipt of a duly issued notice of right to sue. *See* 42 U.S.C. § 2000e–5(f)(1); 29 U.S.C. § 626(e); *see also Watts–Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) ("Title VII plaintiffs have a ninety-day period in which to file their claims after the EEOC has given them a right-to-sue letter.") (citing 42 U.S.C. § 2000e–5(f)(1)). If suit is not brought within the statutory period, the case is subject to dismissal unless equitable tolling applies. *See Harper v. Burgess*, 701 F.2d 29, 30 (4th Cir. 1983) (affirming dismissal of a lawsuit brought pursuant to Title VII because the plaintiff did not file suit within the ninety-day limitation period required by 42 U.S.C. § 2000e-5(f)); *Dixon v. Digit. Equip. Corp.*, 976 F.2d 725 (4th Cir. 1992) (Table) (dismissing suit and rejecting equitable tolling where *pro se* plaintiff filed suit one day late); *Harvey v. City of New Bern Police Dept.*, 813 F.2d 652, 653 (4th Cir. 1993) (noting that "district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period").

Here, it is undisputed that Plaintiff filed three charges with the EEOC prior to filing the instant civil action. Plaintiff filed her first charge with the EEOC on May 31, 2023, alleging workplace harassment, sex discrimination, and race discrimination based on the May 19, 2023 incident with Fogarty. (Dkt. No. 79 at ¶ 39.) The EEOC issued the right to sue regarding this charge on June 5, 2023, but Plaintiff claims she did not file a cause of action with the Court for fear of retaliation. (*Id.* at ¶ 40.) Plaintiff filed her second charge with the EEOC on October 5, 2023. (*Id.*

at ¶ 56.) The second charge alleged that she was subjected to workplace harassment on May 19,

2023, when Fogarty yelled at her and repeatedly waved his finger in her face after becoming upset

at her for not checking a QPC Code. (*Id.*) The second charge further alleged that after Plaintiff

filed a complaint of discrimination, she was subjected to retaliation when her printing capabilities

were disabled multiple times and when her work hours were adjusted without her knowledge. (*Id.*)

Plaintiff alleged discrimination based on sex and race. (*Id.*) The EEOC issued a right to sue

regarding this charge on October 6, 2023. (*Id.* at ¶ 57.) Plaintiff did not file a civil action within

ninety days of receiving the right to sue letter regarding her second charge.

On May 2, 2024, Plaintiff filed her third charge of discrimination with the EEOC, alleging

retaliation and race and sex discrimination from December 6, 2022, through November 21, 2023.

(*Id.* at ¶¶ 25–26.) The EEOC issued a right to sue letter regarding this charge on November 19,

2024. (*Id.* at ¶ 28.) Plaintiff filed the instant civil action on December 17, 2024, less than ninety

days after receiving the EEOC's right to sue letter for her third charge. (Dkt. Nos. 1, 1-1.)

Defendants do not dispute that Plaintiff's Title VII claims stemming from her third EEOC

charge are timely. (*See generally* Dkt. No. 93-1.) However, Defendants contend that Plaintiff's

Title VII claims should be dismissed as untimely to the extent they rely on allegations set forth in

her first two EEOC charges, and that Plaintiff's ADEA claim should be dismissed as untimely

because it was not included in her third EEOC charge. (*Id.* at 6–11.) Defendants further assert that

the Court should not consider Plaintiff's Title VII and/or ADEA claims to the extent such claims

stem from conduct occurring over 300 days prior to the date she filed her third EEOC charge. (*Id.*)

In response, Plaintiff contends that dismissal of the aforementioned claims is inappropriate at this

juncture because the Court should not reach the merits of affirmative defenses on a motion to

dismiss, and because her claims may be subject to equitable tolling. (Dkt. No. 98 at 2; Dkt. No. 110 at 2–3.)

Filing "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in a federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines,* 455 U.S. 385, 393 (1982). "[A] motion to dismiss that is filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). A motion to dismiss may resolve the merits of a defense that a plaintiff's claim is time-barred only in the "rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* Courts have observed that "because equitable tolling may depend on matters outside the pleadings, 'it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue.'" *Reese v. Bank*, No. 3:16-cv-3491-JFA-PJG, 2017 WL 9275213, at *2 (D.S.C. Aug. 29, 2017) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003–04 (9th Cir. 2006)), *adopted*, 2017 WL 5589573 (D.S.C. Nov. 21, 2017).

Considering Plaintiff's *pro se* status and her contentions that her untimely Title VII and ADEA claims may be saved by equitable tolling, the undersigned finds it inappropriate to dismiss these claims at this early stage of the litigation. Indeed, whether equitable tolling applies in this case depends on matters outside the pleadings. More specifically, Plaintiff's response to Defendants' motion suggests that Plaintiff was misdirected or misled, which impeded her ability to timely file a complaint following her first two EEOC charges and corresponding right to sue letters. (Dkt. No. 110 at 3, stating "Equitable tolling may apply where overlapping agency

14

processes, misdirection, or misleading information impeded timely filing, especially for a *pro se* claimant.") If this is true, equitable tolling may be appropriate, as equitable tolling is available in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks and citation omitted). However, the Court cannot determine the validity of these allegations based solely on the pleadings. Accordingly, Defendants' request that the Court dismiss Plaintiff's Title VII and ADEA claims based on allegations set forth in Plaintiff's first two EEOC charges should be **DENIED**, without prejudice to Defendants' ability to renew this request in a motion for summary judgment at the appropriate time. *See Reese*, 2017 WL 5589573, at *3 (denying Rule 12 timeliness challenge to employment matter, noting issues of an affirmative defense and reliance on equitable tolling generally should not be considered without a fully developed record); *see also Yoo v. BMW Mfg. Co., LLC*, No. 7:17-cv-03499-TMC, 2019 WL 1416882, at *5 (D.S.C. Mar. 29, 2019) (denying motion to dismiss workers-compensation retaliation claim as untimely because face of complaint insufficient to establish the affirmative defense or that plaintiff was not entitled to equitable tolling).

## II. Title VI Claim

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI itself directly reach[es] only instances of intentional discrimination," and does not cover disparate impact practices. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (referencing *Alexander v. Choate*, 469 U.S. 287, 293 (1985)). Thus, to survive a motion to dismiss her Title VI

claim, Plaintiff "must plead sufficient facts supporting that (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin." *Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 355 (D. Md. 2022) (referencing *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 21-cv-01637-PX, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021)).

What is more, "Title VI does not provide redress for employment discrimination claims unless the employer receives federal financial assistance with the primary objective of that federal financial assistance being to provide employment." *Keeshan v. Eau Claire Co-op. Health Centers, Inc.*, No. 3:05-cv-3601-MBS, 2007 WL 2903962, at *19 (D.S.C. Oct. 2, 2007) (referencing 42 U.S.C. § 2000d–3; *Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87, 89 (4th Cir.1978)), *aff'd sub nom. Keeshan v. Eau Claire Coop. Health Centers, Inc.*, 394 F. App'x 987 (4th Cir. 2010). As such, Plaintiff must ultimately provide "evidence that a defendant receives federal funds for employment purposes" to sustain her Title VI claim. *Sullivan v. Wake Forest Univ. Health Scis.*, No. 1:20-cv-281, 2024 WL 1307140, at *5 (M.D.N.C. Mar. 27, 2024) (referencing *Luallen v. Guilford Health Care Ctr.*, No. 1:02-cv-00738, 2003 WL 23094916, at *11 (M.D.N.C. Dec. 18, 2003), *aff'd*, 115 F. App'x 167 (4th Cir. 2004) (unpublished)).

Defendants contend that the Court should dismiss Plaintiff's Title VI claim because Defendant Curtiss-Wright is a private employer, and the primary purpose of its federal funding is not Plaintiff's employment. (Dkt. No. 93-1 at 17.) More specifically, Defendants contend that "Plaintiff does not allege that the Department of Defense provided Curtiss-Wright with federal financial assistance for the purpose of providing employment, nor does she allege that such assistance was intended to benefit her." (*Id.* at 18.) Defendants assert that Plaintiff therefore "cannot demonstrate that providing employment is a primary objective of Curtiss-Wright's federal

aid, nor can she establish that she was an intended beneficiary of that aid," so her Title VI claim must be dismissed. (*Id*. at 18–19.) In response, Plaintiff argues that "Curtiss-Wright receives extensive funding for Navy contracts" and "[w]hether those funds extend to employment practices is a factual issue requiring discovery." (Dkt. No. 98 at 2.)

Upon review, the undersigned **RECOMMENDS** that Defendants' Partial Motion to Dismiss (Dkt. No. 93) should be **DENIED** as to Plaintiff's Title VI claim. Plaintiff has plausibly alleged that Defendant Curtiss-Wright—the only Defendant against whom she brings her Title VI claim—is a recipient of federal financial assistance. (*See generally* Dkt. No. 79); *see also Carroll*, 650 F. Supp. 3d at 355 (outlining elements of valid Title VI claim). Plaintiff has further alleged that Defendant Curtiss-Wright intentionally discriminated against her because of her race. *See generally* Dkt. No. 79); *see also Carroll*, 650 F. Supp. 3d at 355 (outlining elements of valid Title VI claim). Accepting these allegations as true and drawing all inferences in Plaintiff's favor—as the Court must at this early stage—Plaintiff has plausibly alleged a Title VI claim. What is more, the primary purpose of Defendant Curtiss-Wright's federal financial assistance is a factual issue requiring discovery. *See Republican Party of N.C.*, 980 F.2d at 952 ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of [affirmative] defenses."). Thus, at this juncture, Defendants' request to dismiss Plaintiff's Title VI claim must be **DENIED**.

### III.    Slander Claim

Slander is a spoken defamation. *Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126 (S.C. 1999). Under South Carolina law, "[t]he tort of defamation allows a plaintiff to recover when a defendant communicates a false message about the plaintiff to others that injures the plaintiff's reputation." *Trahey v. Grand Strand Reg'l Med. Ctr./HCA Healthcare, Inc./Parallon*,

No. 4:22-cv-1567-RBH-TER, 2023 WL 2815469, at *7 (D.S.C. Jan. 9, 2023) (referencing *McBride v. Sch. Dist. of Greenville Cty.*, 698 S.E.2d 845, 852 (S.C. Ct. App. 2010)), *adopted in relevant part sub nom. Trahey v. Grand Strand Reg'l Med. Ctr./HCA Healthcare, Inc. Parallon*, 2023 WL 2643833 (D.S.C. Mar. 27, 2023). A party asserting a defamation claim must prove the following: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." *Williams v. Lancaster Cty. Sch. Dist.*, 631 S.E.2d 286, 292 (S.C. Ct. App. 2006).

In support of her slander claim, Plaintiff alleges that the Individual Defendants "published false and unprivileged statements about Plaintiff to third parties, including other employees." (Dkt. No. 79 at ¶ 120.) Pertinently, Plaintiff alleges that Defendant Lanier "created a false disciplinary record to justify Plaintiff's suspension and termination" and that Defendant Sablotsky "falsely told other employees that Plaintiff was 'combative' and 'threw water on a computer.'" (*Id*. at ¶ 121.) Plaintiff alleges that these statements "were defamatory *per se*, as they imputed professional misconduct and were intended to harm Plaintiff's reputation, and did in fact cause harm, including her termination." (*Id*. at ¶ 122.)

Defendants contend that Plaintiff's slander claim against the Individual Defendants must be dismissed because Plaintiff has failed to plead her claim "with the requisite specificity to survive a motion to dismiss." (Dkt. No. 93-1 at 14.) Alternatively, Defendants contend that Plaintiff's slander claim should be dismissed because the alleged defamatory statements were qualifiedly privileged. (*Id*. at 16.)  In response, Plaintiff asserts that she has sufficiently alleged "falsity, publication, fault, and harm," noting that her allegations "identify the speakers, gist of the

statements, timeframe, audience, and context." (Dkt. No. 110 at 4.) Plaintiff further contends that "[p]rivilege is an affirmative defense not resolvable at this stage." (Dkt. No. 98 at 2.)

Considering Plaintiff's *pro se* status and the liberal construction the Court must afford her pleadings in light of that status, the undersigned **RECOMMENDS** that Defendants' Partial Motion to Dismiss (Dkt. No. 93) should be **DENIED** with respect to Plaintiff's slander claim. Plaintiff has alleged that the Individual Defendants each made false and defamatory statements about Plaintiff to other employees. (Dkt. No. 79 at ¶ 120.) Plaintiff further alleges that she was harmed by these statements because they "imputed professional misconduct" and ultimately caused her termination. (*Id.* at ¶ 122.) These allegations provide Defendants "fair notice of what the claim is and the grounds upon which it rests," which is all that is required at this early stage. *See Bell Atl. Corp.*, 550 U.S. at 555 (internal quotation marks omitted); *see also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248 (4th Cir. 2005) ("Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'" (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

As for Defendants' contention that Plaintiff's slander claim should be dismissed because the Individual Defendants' alleged statements are qualifiedly privileged, the undersigned finds this argument premature. As Plaintiff correctly notes, privilege is an affirmative defense that cannot be considered on a Rule 12(b)(6) motion. *See Ballard v. Weston & Sampson Eng'rs, Inc.*, No. 2:24-cv-1682-RMG, 2025 WL 829992, at *4 (D.S.C. Mar. 17, 2025) ("In a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege." (referencing *Swinton Creek Nursery*, 514 S.E.2d at 134)); *see also Republican Party of N.C.*, 980 F.2d at 952 ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does

not resolve contests surrounding the facts, the merits of a claim, or the applicability of [affirmative] defenses."). Whether a qualified or conditional privilege has been abused is a question of fact that the Court cannot decide at this juncture. *Ballard*, No. 2:24-cv-1682-RMG, 2025 WL 829992, at *4 (referencing *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 749 (S.C. Ct. App. 2001)). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's slander claim against the Individual Defendants should survive.

### IV.    Breach of Contract Claim

Defendants also assert that the Court should dismiss Plaintiff's state-law breach of contract claims, arguing that Plaintiff has failed to set forth facts sufficient to demonstrate that Plaintiff had the requisite contractual relationship with Defendant Curtiss-Wright. (Dkt. No. 93-1 at 19–22.) As a threshold matter, Plaintiff must show that she entered into a contract with Defendant Curtiss-Wright in order to establish a valid breach of contract claim. The elements required to establish a contract are an offer, acceptance, and valuable consideration. *Roberts v. Gaskins*, 486 S.E.2d 771, 773 (S.C. 1997) (citing *Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co.*, 437 S.E.2d 122 (S.C. 1993)).

In South Carolina, there is a presumption of at-will employment. *Prescott v. Farmer's Tel. Co-Op., Inc.*, 516 S.E.2d 923, 927, n.8 (S.C. 1999). Thus, "in order to survive a Rule 12 motion to dismiss on a claim for breach of contract of employment, a [p]laintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship.'" *Perrine v. G4S Secure Solutions (USA), Inc.*, No. 2:11-cv-1210-RMG, 2011 WL 3563110, at *1 (D.S.C. Aug. 9, 2011) (quoting *Amason v. P.K. Management, LLC*, No. 3:10-cv-1752-JFA, 2011 WL 1100169, at *6 (D.S.C. Mar. 23, 2011)). In other words, a complaint for breach of contract of employment must "set forth sufficient factual allegations . . . to state a facially

plausible claim that the [p]arties entered into a contract with terms of employment that limited the duration of the relationship or the right of termination or both." *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-cv-01698-PMD, 2013 WL 5587854, at *6 (D.S.C. Oct. 10, 2013); *Lawrence v. Westinghouse Savannah River Co., Inc.*, No. 1:03-cv-484-27, 2005 WL 3968031, at *14 (D.S.C. Mar. 31, 2005) (noting that "[f]or a contract to be created, the employee must be aware of promises . . . , must have relied on (and continued work in reliance on) those promises, and the promises must restrict the right to discharge"); *see also Storms v. Goodyear Tire & Rubber Co.*, 775 F. Supp. 862, 867 (D.S.C. 1991) (finding language in the agreement insufficient to form a contract when it is "not couched in mandatory terms and does not contain language that specifically limits the employer's right to demote or terminate [plaintiff] without cause").

Here, Plaintiff alleges that Defendant Curtiss-Wright's employee policies and Code of Conduct "created an implied contract or modified the at-will employment relationship" and that Defendant Curtiss-Wright breached this contract by "failing to follow [its] own policies and by terminating Plaintiff in retaliation for her complaints, in bad faith, and in violation of public policy." (Dkt. No. 79 at ¶¶ 144–45.) By contrast, Defendants contend that the policies Plaintiff references did not alter the at-will employment relationship because they "did not impose binding obligations on the employer and were clearly disclaimed," and, therefore, "cannot be construed as forming a contractual relationship under South Carolina law." (Dkt. No. 93-1 at 20.) More specifically, Defendants explain that Defendant Curtiss-Wright's disciplinary policy does not include mandatory language; rather, the policy states:

> Failure to comply with the Code of Conduct may result in disciplinary action, up to and including termination, as appropriate, and may also require restitution or reimbursement from the employee and referral of the matter to government authorities under the guidance of the Law Department. Discipline may also be imposed for conduct that is considered unethical or improper even if the conduct is not specifically covered by this Code.

(*Id.*) Defendants contend that "[t]his language merely outlines Curtiss-Wright's expectations and reserves sole discretion to the employer regarding when and how disciplinary action may be taken." (*Id.* at 21.) Defendants further note that "Curtiss-Wright's Equal Opportunity statement contains aspirational language . . . [and] contains no mandatory or promissory procedural language." (*Id.*) Defendants recount that the Code of Conduct containing the policies Plaintiff references in her Fourth Amended Complaint explicitly states:

> This Code does not in any way constitute an employment contract, an assurance of continued employment, or any term of employment. Your rights as an employee and Curtiss-Wright's rights as an employer are governed by the laws of the country of employment, the work rules of your employing unit, and your individual written employment contract, if any. This Code is intended to clarify Curtiss-Wright's rights and expectations as an employer but does not add or subtract from employee's rights. In the United States and many other countries, employment by Curtiss-Wright is employment at will. This means that you have the right to terminate your employment at any time and for any reason without notice, and Curtiss-Wright may exercise the same right.

(*Id.*)[3]

Based on the foregoing, the undersigned finds that Plaintiff's breach of contract claim should be **DISMISSED**. Clearly, the language quoted above does not limit the duration of Plaintiff's employment relationship with Defendant Curtiss-Wright, nor does it limit Defendant Curtiss-Wright's right to terminate Plaintiff's employment or otherwise constitute mandatory language that could be interpreted as altering the terms of Plaintiff's at-will employment with Defendant Curtiss-Wright. *See Weaver*, 2013 WL 5587854, at *6 (noting that a plaintiff must "set forth sufficient factual allegations . . . to state a facially plausible claim that the [p]arties entered

---

[3]     Although the referenced policies are not attached to Defendants' Partial Motion to Dismiss, Plaintiff does not oppose the quoted language. (*See generally* Dkt. Nos. 79, 98, 110.) Further, these policies are explicitly relied upon in, integral to, and incorporated into the Fourth Amended Complaint such that the Court may consider them in the ruling upon Defendants' motion. (*See generally* Dkt. No. 79); *see also Kolon Indus., Inc.*, 637 F.3d at 448 (noting that a court considers "the complaint in its entirety, as well as documents attached or incorporated into the complaint," and documents "integral to and explicitly relied on in the complaint" when ruling on a motion to dismiss, so long as there is no authenticity challenge).

into a contract with terms of employment that limited the duration of the relationship or the right of termination or both" to overcome the presumption of at-will employment in this state).

Further, in this District, "[a] defendant's non-discrimination policy 'does not constitute a promise altering the at-will employment relationship and giving rise to a breach-of-contract claim.'" *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560 (D.S.C. 2009) (quoting *Fyall v. ATC/Ancon of South Carolina, L.P and Nat'l Express Corp.*, No 2:04-cv-23086-CWH, 2005 WL 2656962 (D.S.C. October 18, 2005)); *see also Hessenthaler v. Tri–County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005) (holding that an employee handbook's nondiscrimination provision "does not constitute a promise altering the at-will employment relationship and giving rise to a breach-of-contract claim"). As such, the policies referenced in Plaintiff's Fourth Amended Complaint are insufficient to overcome the presumption of at-will employment and/or sustain a cause of action for breach of contract. *See Eady*, 609 F. Supp. 2d at 560 ("The non-discrimination language in the defendant's Handbook will not sustain the plaintiff's cause of action for breach of contract."); *Fyall*, 2005 WL 2656962, at *4 ("An employer's general non-discrimination policy is too indefinite to sustain a cause of action for breach of contract.").

Because Plaintiff does not otherwise allege facts showing the existence of a contract or policy that limited the duration of her employment or Defendant Curtiss-Wright's right to terminate her, Plaintiff cannot overcome the presumption of at-will employment. (*See generally* Dkt. No. 79.) Accordingly, the Fourth Amended Complaint does not plausibly allege a breach of contract claim. *Ludwick v. Urb. Nirvana, LLC*, No. 2:23-cv-03372-BHH-MHC, 2023 WL 9065095, at *4–5 (D.S.C. Dec. 12, 2023) (noting that "termination of at-will employment generally does not give rise to a breach of contract claim"), *adopted*, 2024 WL 38739 (D.S.C. Jan. 3, 2024). The undersigned therefore **RECOMMENDS** that Defendants' Partial Motion to Dismiss (Dkt.

No. 93) should be **GRANTED** as to Plaintiff's breach of contract claim. *See Perrine*, 2011 WL 3563110, at *1 (explaining that a plaintiff must sufficiently plead the existence of an employment contract beyond the at-will relationship to survive a Rule 12 motion to dismiss on a claim for breach of contract of employment).

### V.     Tortious Interference with a Contract Claim

Though Plaintiff's failure to overcome the presumption of at-will employment defeats her breach of contract claim, such failure does not necessarily forestall her tortious interference claim. *See Hall v. UBS Fin. Servs. Inc.*, 866 S.E.2d 337, 344 (S.C. 2021) (finding that an at-will employee can maintain an action for tortious interference with a contract against a third-party and explaining that "an employee with an at will employment contract must be able to expect that his continued employment depends on the will of his employer and not upon the whim of a third party interferer" (internal quotation marks and citation omitted)); *Hilton v. Trident Tech. Coll.*, No. 2:24-cv-07719-RMG-MHC, 2025 WL 1654806, at *7 (D.S.C. Mar. 7, 2025) ("South Carolina jurisprudence recognizes that a plaintiff may have a claim for tortious interference with an at-will employment contract, even absent an underlying breach by the terminating employer."), *adopted*, 2025 WL 1335485 (D.S.C. May 8, 2025). Still, Defendants contend that Plaintiff's tortious interference claim against the Individual Defendants should be dismissed because Plaintiff's allegations are insufficient to state a valid claim. (Dkt. No. 93-1 at 11–14.)

A valid claim of tortious interference with a contract requires allegations sufficient to show: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages. *Hall*, 866 S.E.2d at 344; *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 642 S.E.2d 726, 731 (S.C. 2007). Here, Plaintiff alleges that she had an at-will employment contract with Defendant Curtiss-

Wright, that the Individual Defendants were aware of this contractual relationship, and that the Individual Defendants "intentionally and unjustifiably interfered with this contract by making false statements and orchestrating a pretextual basis for Plaintiff's termination, thereby inducing Curtiss-Wright to breach its employment relationship with Plaintiff." (Dkt. No. 79 at ¶¶ 124–26.) Plaintiff further alleges that "[a]s a direct result of [the Individual Defendants'] interference, Plaintiff suffered economic damages, including the loss of her job." (*Id.* at ¶ 127.)

Defendants contend that Plaintiff's allegations are insufficient to state a valid claim for tortious interference because "[t]he District of South Carolina has consistently held that coworkers, as agents of an employer, are not third parties when acting within the scope of their employment and, thus, cannot be liable for tortious with a contract." (Dkt. No. 93-1 at 11–12.) In response, Plaintiff contends that her tortious interference claim should not be dismissed because the Individual Defendants "exceeded their authority by falsifying reports and spreading lies to secure Plaintiff's termination," and "South Carolina recognizes liability where an agent acts with actual malice, for personal motives, or outside the scope of authority." (Dkt. No. 98 at 2; Dkt. No. 110 at 4.)

Defendants are correct that "[t]his court has held that coworkers, as agents of an employer, are not third parties and, thus, cannot be liable for tortious interference with a contract." *Barrett v. Grand Strand Reg'l Med. Ctr./HCA Healthcare, Inc./Parallon*, No. 4:23-cv-2658-RBH-TER, 2024 WL 1494706, at *7 (D.S.C. Jan. 3, 2024), *adopted sub nom. Barrett v. Grand Strand Reg'l Med. Ctr./HCA Healthcare, Inc. Parallon*, 2024 WL 1191109 (D.S.C. Mar. 20, 2024); *see also McLendon v. Horry County Police Department*, No. 4:13-cv-3403-BHH, 2016 WL 1168142 (D.S.C. March 25, 2016) ("[B]ecause [the plaintiff's supervisors] are agents of Plaintiff's employer [], Plaintiff cannot maintain an action against them for intentional interference with a

contract"); *Farley v. Goodwill Indus. of Lower S.C., Inc.*, No. 4:15-cv-2450, 2016 WL 408949, at *16 (D.S.C. Jan. 12, 2016) (finding that plaintiff did not establish "a plausible claim of tortious interference with contract against" defendant who, as an agent of plaintiff's employer, was a party to the contract between plaintiff and the employer), *adopted*, 2016 WL 398159 (D.S.C. Feb. 2, 2016); *Wencoast Restaurants, Inc. v. Chart Capital Partners, L.P.*, No. 2:05-cv-1650-18, 2006 WL 490101, at *3 (D.S.C. Feb. 28, 2006) (finding plaintiff could not establish an interference with contract claim against defendants who were parties to the contact, including the agents and employees of the defendants).

However, Plaintiff is also correct that South Carolina law recognizes tortious interference claims against third-party employees if those employees act with actual malice or outside the scope of their employment. *See Dutch Fork Dev. Grp. II, LLC v. SEL Properties, LLC*, 753 S.E.2d 840, 844 (S.C. 2012) ("[A]n agent may be liable for tortious interference, just as if the agent were an outside third party, if the allegedly interfering acts were conducted outside the scope of the agent's authority."); *Crittenden v. Thompson-Walker Co., Inc.*, 341 S.E.2d 385, 387 (S.C. Ct. App. 1986) ("[I]f the servant acts for some independent purpose of his own, wholly disconnected with the furtherance of his master's business, his conduct falls outside the scope of his employment.").

Upon review, the undersigned finds that the Fourth Amended Complaint proffers allegations from which the Court could infer that the Individual Defendants acted with actual malice and/or outside the scope of their employment. Plaintiff alleges that the Individual Defendants intentionally made false statements and falsified reports. (*See generally* Dkt. No. 79.) Plaintiff further alleges that the Individual Defendants acted "intentionally" and "unjustifiably." (*Id*. at ¶ 126.) Again accepting these allegations as true and drawing all inferences in Plaintiff's favor—as the Court must at this early stage—the allegations are sufficient to support a valid

tortious interference claim at this juncture. Indeed, as Plaintiff correctly notes, the Court cannot determine whether the Individual Defendants' conduct "was privileged, justified, or within [the scope of their employment]" at this early stage of litigation, based solely on the face of the Fourth Amended Complaint. (Dkt. No. 110 at 4.) Thus, considering Plaintiff's *pro se* status and the liberal construction the undersigned must afford her pleadings, Defendants' request to dismiss Plaintiff's tortious interference claim should be **DENIED**.

<u>**CONCLUSION**</u>

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Partial Motion to Dismiss (Dkt. No. 93) should be **GRANTED IN PART AND DENIED IN PART**. More specifically, the undersigned **RECOMMENDS** that Plaintiff's state law breach of contract claim should be **DISMISSED**, and that all other claims should **SURVIVE**.[4]

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

December 15, 2025
Charleston, South Carolina

---

[4]    As noted, Plaintiff's federal claims for discrimination in violation of 42 U.S.C. § 1981, whistleblower retaliation in violation of 41 U.S.C. § 4712 and 31 U.S.C. § 3730(h), and illegal interception of communications in violation of 18 U.S.C. § 2511 are not at issue in Defendants' Partial Motion to Dismiss, nor are Plaintiff's state law claims for invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. (*See generally* Dkt. Nos. 79, 93.)

27

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).