**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| DEBRA NELSON,<br><br>Plaintiff,<br><br>v.<br><br>CURTISS WRIGHT ELECTRO MECHANICAL CORP. d/b/a Curtiss-Wright Steam and Air Solutions, STEPHANIE LANIER, and SHANE SABLOTSKY,<br><br>Defendants. | ) | Case No. 2:25-cv-00405-RMG-MGB<br><br>**ORDER AND**<br>**REPORT AND RECOMMENDATION** |

Plaintiff, through counsel, initially filed this employment discrimination action in state court. (Dkt. No. 1-1.) Defendants removed the case to this Court on January 21, 2025. (Dkt. No. 1.) Shortly thereafter, Plaintiff's counsel withdrew. (Dkt. Nos. 10, 11, 12, 13, 19.) Plaintiff is now proceeding *pro se*. This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. This case is now before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 322) and Motion to Strike Plaintiff's Supplemental Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 330). For the reasons set forth below, the undersigned **GRANTS** Defendants' Motion to Strike (Dkt. No. 330) and **RECOMMENDS** that the Court should also **GRANT** Defendants' Motion for Summary Judgment (Dkt. No. 322).

## FACTUAL SUMMARY

According to the Fourth Amended Complaint[1], Plaintiff alleges that she is an African American female residing in South Carolina. (Dkt. No. 79 at ¶¶ 30–31.) In April 2022, Defendant Curtiss Wright Electro Mechanical Corp., doing business as Curtiss-Wright Steam and Air Solutions (hereinafter "Curtiss-Wright"), hired Plaintiff as an NDT (Nondestructive Testing) technician. (*Id.* at ¶ 32.) Plaintiff was considered a good employee until she first complained about differential treatment. (*Id.* at ¶ 33.)

In November 2022, Plaintiff filed a complaint asserting that an Executive Assistant was harassing her. (*Id.* at ¶ 34.) Plaintiff alleges that nothing was done regarding the incident, but her work environment became substantially different. (*Id.* at ¶ 35.)

On May 4, 2023, Plaintiff filed a complaint with the Office of the Naval Inspector General. (*Id.* at ¶ 36.) The Hotline and Investigations Division informed Plaintiff that if she wanted to pursue her claims, she would need to provide specific details and complete the Navy Hotline Complaint Form. (*Id.*)

On May 19, 2023, Plaintiff was conducting a Magnetic Particle Test on large diaphragms (a turbine component) with Joseph Couillard. (*Id.* at ¶ 37.) In the middle of the test, Brian Fogarty[2] arrived and began to scream at Plaintiff and "violently point his finger" at her. (*Id.*) Fogarty continued to yell and scream at Plaintiff for several minutes, and Plaintiff backed away from Fogarty, shocked at his behavior. (*Id.*) When Fogarty finished his tirade, Plaintiff informed him that she would tell Joe Cabaup, NDT Level III Manager, about the incident. (*Id.*) Fogarty stated,

---

[1] Given Plaintiff's *pro se* status, the undersigned has used the allegations set forth in the Fourth Amended Complaint in drafting this factual summary in an effort to construe all facts in the light most favorable to Plaintiff. Further, although Plaintiff's claims and arguments have been significantly limited, (*see infra* at 9–12), the undersigned has recounted Plaintiff's allegations in full, out of an abundance of caution.

[2] The Fourth Amended Complaint references "Brian Fogerty." (Dkt. No. 79.) However, subsequent filings indicate that the proper spelling of this name is "Brian Fogarty." (*See, e.g.*, Dkt. No. 242.) For purposes of clarity, the undersigned has used the proper spelling of Mr. Fogarty's name throughout this Report and Recommendation.

"Good," and stomped out. (*Id.*) Plaintiff reported Fogarty's behavior to management and Human Resources, but nothing was done to Fogarty. (*Id.* at ¶ 38.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2023, alleging workplace harassment, sex discrimination, and race discrimination based on the May 19, 2023 incident with Fogarty. (*Id.* at ¶ 39.) Plaintiff alleges that the EEOC issued the right to sue regarding this charge on June 5, 2023, but she did not file a cause of action with the Court for fear of retaliation. (*Id.* at ¶ 40.)

On June 20, 2023, Plaintiff sent a letter to the CEO of Curtiss-Wright, Lynn M. Bamford, regarding the treatment of African-American women at the Summerville facility. (*Id.* at ¶ 41.) Plaintiff contacted CEO Bamford again on June 28, 2023, specifically stating that Plaintiff was being subjected to wage discrimination, discrimination based on sex, favoritism, ageism, bullying, harassment, and a hostile work environment. (*Id.* at ¶ 42.) Plaintiff stated that there was a culture of abusive and aggressive behaviors towards women that was not being addressed and that violated Curtiss-Wright's own policies. (*Id.*) Plaintiff informed CEO Bamford that incidents involving bullying, harassment, hostile work environment, and discrimination had been reported to Defendant Stephanie Lanier ("Defendant Lanier") in Human Resources, but there had been no investigation, determination, or resolution. (*Id.*)

On July 12, 2023, Plaintiff reported to Defendant Lanier in Human Resources that Patrick Ingram was not fulfilling his work duties, including failing to perform his daily inspections. (*Id.* at ¶ 43.) Plaintiff complained of "blatant and continuous favoritism" shown to Ingram since July 2022. (*Id.*) On July 14, 2023, Defendant Lanier allegedly falsified a disciplinary action report by stating that she had given it to Plaintiff. (*Id.* at ¶ 44.)

On July 20, 2023, Defendant Lanier informed Plaintiff that Fogarty was giving Plaintiff feedback, not bullying her. (*Id.* at ¶ 45.) On July 25, 2023, Plaintiff was required to attend a meeting with Defendant Lanier, Mary Workoff, and Antonio Coleman regarding bullying, discrimination, and favoritism. (*Id.* at ¶ 46.) Workoff and Lanier informed Plaintiff that the bullying incident with Fogarty had been handled, though it may not have been what Plaintiff wanted. Plaintiff asked how many chances a person had to bully someone, and Lanier responded, "It depends." (*Id.*)

On July 27, 2023, Plaintiff emailed Coleman and Defendant Lanier, outlining examples of what Plaintiff believed to be favoritism and discrimination based on race. (*Id.* at ¶ 47.) She also complained that Fogarty's bullying and hostile work environment were not "constructive feedback." (*Id.*)

On July 31, 2023, Plaintiff received an email from Vice President/General Counsel/Corporate Secretary Paul Ferdenzi, stating that CEO Bamford had forwarded Plaintiff's complaint to him for handling and that an independent investigation would be performed on her claims. (*Id.* at ¶ 48.) On August 7, 2023, Plaintiff informed Ferdenzi that she had sent the materials to him regarding her complaint a month ago and that she was contacting news outlets. (*Id.* at ¶ 49.) Ferdenzi responded, "Please feel free to do whatever you believe is best for you. If you are telling me these things to influence our investigation, it won't work. We will conduct an independent an[d] objective review of your concerns and then let you know what we determine." (*Id.*)

On August 10, 2023, Plaintiff filed a complaint with the Naval Inspector General (NAVINSGEN). (*Id.* at ¶ 50.) The complaint asserted that Fogarty had violated policies regarding bullying based on sex and that Curtiss-Wright refused to address any of her complaints to managers or Human Resources. (*Id.*) Plaintiff also asserted that Defendant Curtiss-Wright covered up all incidents and complaints. (*Id.*)

On August 26, 2023, Plaintiff filed another complaint with NAVINSGEN. (*Id.* at ¶ 51.) This complaint addressed Fogarty's treatment of women and asserted that Curtiss-Wright's investigation into her complaints had taken over three months and nothing had been done. (*Id.*) She specifically complained as follows: "There is a culture of abusive behavior towards women. There is no one holding perpetrators accountable for their actions even when there are complaints filed. Management is too concerned with protecting their friends and not following laws and their own code of conduct." (*Id.*) Plaintiff informed NAVINSGEN that she was being retaliated against, that she had filed complaints with the EEOC, and that the EEOC had informed her that there was not enough evidence to go forward with a charge of discrimination. (*Id.*)

On September 18, 2023, Curtiss-Wright fired Mary Workoff, the plant manager at the Summerville, SC facility. (*Id.* at ¶ 52.) Plaintiff's timecard was altered for September 26–29, 2023. (*Id.* at ¶ 53.)

On September 26, 2023, Plaintiff filed a formal complaint with Human Resources EthicsPoint for Curtiss-Wright. (*Id.* at ¶ 54.) Plaintiff complained that she was being blocked from printing due to the fact that she was using emails to report Defendant Curtiss-Wright to the Department of the Navy. (*Id.*) Plaintiff complained that Defendant Lanier harassed and bullied Plaintiff, failed to treat Plaintiff with respect, and disciplined Plaintiff in retaliation for Plaintiff's complaints to the EEOC, the Department of the Navy, and the Inspector General. (*Id.*)

On September 28, 2023, Plaintiff filed another complaint with NAVINSGEN alleging that she was being subjected to retaliation and hostile work environment and that she had been verbally counseled and threatened with termination. (*Id.* at ¶ 55.)

Plaintiff filed a second charge of discrimination with the EEOC on October 5, 2023. (*Id.* at ¶ 56.) This second charge alleged that she was subjected to workplace harassment on May 19,

2023, when Fogarty yelled at her and repeatedly waved his finger in her face after becoming upset at her for not checking the QPC Code. (*Id.*) The second charge further alleged that after Plaintiff filed a complaint of discrimination, she was subjected to retaliation when her printing capabilities were disabled multiple times and when her work hours were adjusted without her knowledge. (*Id.*) Plaintiff alleged discrimination based on sex and race. (*Id.*) The EEOC issued a right to sue regarding Plaintiff's second charge on October 6, 2023. (*Id.* at ¶ 57.)

On October 16, 2023, Plaintiff learned that her Ethics complaint was determined to be without merit. (*Id.* at ¶ 58.)

On November 7, 2023, Plaintiff filed another complaint with NAVINSGEN and the Department of Labor's Office of Federal Contract Complaint (OFCCP) regarding her work environment and retaliation, specifically stating that her time was being "tampered with"; that Curtiss-Wright was not giving her the practical exam she needed to become certified, which negatively impacted her pay; that male employees were being paid more per hour; and that Curtiss-Wright was failing to convert certain individuals from contract to direct employees. (*Id.* at ¶¶ 59, 67–68.)

On November 14, 2023, Plaintiff received a final written warning. (*Id.* at ¶ 60.) Plaintiff went to HR and accused Defendant Lanier of lying on Plaintiff's disciplinary action. (*Id.*) "In order to not appear threatening, . . . Plaintiff immediately backed away from [Defendant] Lanier's desk and did not make any statements but sat in a chair several feet away from Lanier." (*Id.*) However, Defendant Lanier later lied when she told others that Plaintiff had stood over her and been threatening. (*Id.*) As a result, Plaintiff was suspended for alleged abusive and unprofessional behavior, even though Fogarty had not been suspended for his behavior towards Plaintiff in May. (*Id.*)

On November 15, 2023, a co-worker told Plaintiff that Defendant Shane Sablotsky and others were telling employees that Plaintiff had been suspended because she was combative and threw water on a computer during a meeting. (*Id.* at ¶ 61.)

On November 20, 2023, Defendant Lanier sent Plaintiff an email informing her that if she wanted her personal items from her locker, Defendant Lanier would mail them to her. (*Id.* at ¶ 62.)

On December 1, 2023, Plaintiff left a voicemail for April James in Human Resources, inquiring about the status of her suspension. (*Id.* at ¶ 65.) Plaintiff subsequently received a letter dated November 21, 2023, informing her that she had been terminated effective November 21, 2023. (*Id.* at ¶¶ 63, 66.) Plaintiff alleges that she was replaced by a Caucasian male. (*Id.* at ¶ 78.)

On December 14, 2023, Plaintiff learned that the complaint she had filed with the OFCCP on November 7, 2023, had been transferred to the EEOC for investigation. (*Id.* at ¶¶ 67–68.) Plaintiff contacted the EEOC in January 2024 to find out the status of this complaint, but she did not receive a response. (*Id.* at ¶¶ 23–24.)

Plaintiff alleges that, in early 2024 and into 2025, Plaintiff experienced repeated cyber-intrusions and physical surveillance as follows:

- Her personal devices displayed unauthorized log-in attempts, corrupted files, and system override messages after she pursued her complaints.
- While on mandatory work travel in Yuma, Arizona in April of 2024, Plaintiff was followed by an unknown woman; later confirmed on hotel surveillance, which Plaintiff reported to hotel management.
- On April 22, 2025, her personal vehicle's infotainment system played unsolicited audio and broadcast her private calls without consent.

(*Id.* at ¶ 99.) Plaintiff alleges that "Defendants were aware of Plaintiff's protected disclosures yet took no steps to halt the hacking or surveillance and instead coordinated adverse actions culminating in her termination."[3] (*Id.* at ¶ 100.)

On May 2, 2024, Plaintiff filed her third charge of discrimination with the EEOC, alleging retaliation and race and sex discrimination from December 6, 2022, through November 21, 2023. (*Id.* at ¶¶ 25–26.) The EEOC issued its right to sue to Plaintiff on November 19, 2024. (*Id.* at ¶ 28.) Plaintiff filed her initial Complaint in this civil action on December 17, 2024, alleging, *inter alia*, discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act (the "ADEA"). (Dkt. No. 1.)

By her Fourth Amended Complaint, Plaintiff had raised fourteen causes of action, including: (1) a claim against all Defendants for race discrimination in violation of Title VII and § 1981; (2) a claim against all Defendants for sex discrimination in violation of Title VII; (3) a claim against all Defendants for age discrimination in violation of the ADEA; (4) a claim against Defendant Curtiss-Wright for hostile work environment in violation of Title VII; (5) a claim against all Defendants for retaliation in violation of Title VII and the ADEA; (6) a claim against Defendants Lanier and Sablotsky (collectively, the "Individual Defendants") for slander; (7) a claim against the Individual Defendants for tortious interference with a contract; (8) a claim against all Defendants for whistleblower retaliation, in violation of 41 U.S.C. § 4712 and 31 U.S.C. § 3730(h); (9) a claim against Defendant Curtiss-Wright for violation of Title VI, 42 U.S.C. § 2000d; (10) a claim against all Defendants for invasion of privacy; (11) a claim against all Defendants for illegal interception of communications in violation of the Federal Wiretap Act, 18 U.S.C. § 2511;

---

[3] Plaintiff appears to believe Defendants are responsible for the hacking and surveillance outlined in her Fourth Amended Complaint.

(12) a claim against all Defendants for intentional infliction of emotional distress; (13) a claim against all Defendants for breach of contract; and (14) a claim against all Defendants for civil conspiracy. (Dkt. No. 79.) However, Plaintiff's breach of contract claim was dismissed on January 5, 2026, (Dkt. No. 270), and her claims for whistleblower retaliation, invasion of privacy, illegal interception of communication, and intentional infliction of emotional distress were dismissed on May 4, 2026, (Dkt. No. 316), as was her prayer for relief for emotional distress and her claim for compensatory and economic damages.

Accordingly, only the following issues remain before the Court: (1) Plaintiff's claim against all Defendants for race discrimination in violation of Title VII and § 1981; (2) Plaintiff's claim against all Defendants for sex discrimination in violation of Title VII; (3) Plaintiff's claim against all Defendants for age discrimination in violation of the ADEA; (4) Plaintiff's claim against Defendant Curtiss-Wright for hostile work environment in violation of Title VII; (5) Plaintiff's claim against all Defendants for retaliation in violation of Title VII and the ADEA; (6) Plaintiff's claim against the Individual Defendants for slander; (7) Plaintiff's claim against the Individual Defendants for tortious interference with a contract; (8) Plaintiff's claim against Defendant Curtiss-Wright for violation of Title VI, 42 U.S.C. § 2000d; and (9) Plaintiff's claim against all Defendants for civil conspiracy. (Dkt. Nos. 79, 270, 316.)

## RELEVANT BACKGROUND

As noted, this case was removed to federal court from the Dorchester County Court of Common Pleas on January 21, 2025. (Dkt. No. 1.) Since that time, Plaintiff has amended her complaint four times and filed numerous motions, including more than twenty discovery-related motions. In an effort to resolve the parties' ongoing discovery issues, the Court entered an Order on December 15, 2025 in which the Court ordered both parties to produce certain discovery

materials by January 30, 2026. (Dkt. No. 251.) Relevant here, the Court (1) granted Defendants' Motion to Compel as to Plaintiff's employment and financial records and ordered her to supplement her discovery responses as to such; (2) granted Defendants' Motion to Compel as to Plaintiff's social media posts related to this case and ordered her to supplement her discovery responses as to the same; (3) granted Defendants' Motion to Compel with respect to all documents contained in a flash drive Plaintiff submitted to the Court on or about May 13, 2025 and ordered Plaintiff to produce the same; (4) granted Defendants' Motion to Compel with respect to any and all documents she provided to or received from, and all communications she had with, the Office of the Naval Inspector General related to the complaints she filed against Defendant Curtiss-Wright and ordered Plaintiff to produce the same; and (5) granted Defendants' Motion to Compel as to Plaintiff's medical and therapy records, instructing Plaintiff that she could either forego her intentional infliction of emotional distress claim and her claims for emotional damages or produce her medical and therapy records, permitting Defendants an opportunity to conduct full and fair discovery into such claims. (*Id.*) The Court specifically noted that Plaintiff's failure to produce her medical and therapy records would be construed as a waiver of her intentional infliction of emotional distress and emotional damages claims and explicitly warned Plaintiff that she could be subject to sanctions if she failed to comply with the Court's Order. (*Id*. at 15.)

The Court also specifically noted that no further extensions of the discovery deadline would be granted, and that the discovery deadline had expired except to allow the parties to comply with the orders and instructions set forth in the Court's December 15 Order. (*Id*. at 24.) Accordingly, the Court explained that the parties need not comply with any additional discovery requests served after the date of the Order, as any such requests would be untimely. (*Id*.) What is more, the Court

explicitly stated it would not entertain further discovery motions unless pertinent to the orders and instructions set forth in the December 15 Order. (*Id.*)

Plaintiff then proceeded to file several more discovery-related motions, which the Court denied. (*See, e.g.*, Dkt. Nos. 257, 261, 263, 264, 271, 289.) On January 5, 2026, Plaintiff filed a "Reply, Clarification, and Record Preservation Regarding Order ECF 251." (Dkt. No. 272.) In this filing, Plaintiff indicated that she wanted to proceed with her intentional infliction of emotional distress and emotional damages claims, and stated she would "provide proportional, narrowly tailored supplementation consistent with Federal Rule of Civil Procedure 26(b)(1)." (*Id.* at 1.) Plaintiff's filing noted that she "does not consent to unlimited disclosure of medical or psychotherapy records, does not waive applicable privileges, and does not agree to blanket medical or psychotherapy authorizations," and stated that she had "already served discovery responses asserting proportionality, relevance, privilege, and privacy objections [but would] supplement those responses consistent with ECF 251 . . . ." (*Id.*) Plaintiff's filing then reasserted many of the objections the Court overruled in its December 15 Order, stating that she did not seek additional relief from the December 15 Order but instead sought to "clarify compliance." (*See generally id.*)

In light of the foregoing, Defendants filed a Motion for Sanctions (Dkt. No. 292) on February 13, 2026. On April 2, 2026, the undersigned issued a Report and Recommendation recommending that Defendants' motion should be granted, and that Plaintiff's case should be dismissed in full. (Dkt. No. 309.) In the alternative, the undersigned recommended that Plaintiff's causes of action for intentional infliction of emotional distress and emotional damages, compensatory and economic damages, whistleblower retaliation, and invasion of privacy and illegal interception of communications should be dismissed, and that Plaintiff should be prohibited from using any materials not previously provided to Defendants in support of her claims. (*Id.*) The

District Judge assigned to this case adopted the undersigned's alternative recommendation by Order of the Court dated May 4, 2026.[4] (Dkt. No. 316.) The undersigned then instructed the parties to file dispositive motions by June 15, 2026. (Dkt. No. 318.) In compliance with the undersigned's instructions, Defendants filed the instant summary judgment motion on that date. (Dkt. No. 322.)

The next day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), allowing Plaintiff through July 17, 2026 to file her response brief and advising her of the dismissal procedure and possible consequences if she failed to adequately respond to Defendants' motion. (Dkt. No. 323.) Plaintiff responded in opposition to Defendants' motion on June 30, 2026.[5] (Dkt. No. 326.) Defendants replied to Plaintiff's response on July 9, 2026. (Dkt. No. 328.) Plaintiff then filed a sur-reply to Defendants' reply on July 13, 2026, which Defendants have moved to strike. (Dkt. Nos. 329, 330.) Plaintiff responded in opposition to Defendants' Motion to Strike (Dkt. No. 330) on July 24, 2026. (Dkt. No. 331.) As such, the motions before the Court have been fully briefed and are ripe for disposition.

## DISCUSSION

### I. Motion to Strike

The undersigned first addresses Defendants' Motion to Strike Plaintiff's Supplemental Response to their summary judgment motion (Dkt. No. 330), as disposition of this motion will affect the materials references throughout this Report and Recommendation. Our Court's Local

---

[4] The undersigned has limited the discussion of Plaintiff's claims and evidence throughout this Report and Recommendation accordingly.

[5] Plaintiff's response in opposition improperly attempts to relitigate discovery issues and raise new claims and arguments. (*See generally* Dkt. No. 326); *see also United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to consider issue first raised in reply brief); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs" (internal citations omitted)); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (explaining that "an argument raised for the first time in a reply brief or memorandum will not be considered"). The undersigned reiterates that she has considered only the issues properly before the Court in drafting this Report and Recommendation.

Civil Rules do not create any right to file sur-replies.[6] *See Perez v. S.C. Dep't of Labor, Licensing & Regulation*, No. 3:17-cv-3187-JFA, 2018 WL 2455093, at *4 n.10 (D.S.C. June 1, 2018), *aff'd*, 740 F. App'x 334 (4th Cir. 2018) (per curiam). Rather, sur-replies may be filed only with the Court's permission, and the Court has the authority to strike unauthorized sur-replies. *Id.*; *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009).

Here, Plaintiff did not seek permission to file the sur-reply at issue, and the undersigned sees no reason to grant her retroactive leave to file. While the undersigned recognizes that Plaintiff is representing herself, the Court has continually informed Plaintiff that she must follow the Court's procedural and substantive rules. Further, the undersigned is unconvinced by Plaintiff's argument that the *Roseboro* Order entered at Docket Number 323 in this case permitted Plaintiff to file more than one response to Defendants' summary judgment motion so long as she did so by the July 17, 2026 deadline. (Dkt. No. 331 at 4.) Indeed, the *Roseboro* Order does not so state or imply. (*See generally* Dkt. No. 323.)

What is more, Plaintiff's sur-reply raises new and additional arguments that Defendants did not have an opportunity to address in their reply to Plaintiff's response, (*see generally* Dkt. Nos. 326, 328, 329), and the attachments to Plaintiff's sur-reply appear to include discovery materials that were never produced to Defendants. (*See generally* Dkt. Nos. 329-1, 329-2, 329-3, 329-4, 329-5, 329-6, 329-7, 329-8, 329-9, 329-10, 329-11, 329-12, 329-13, 329-14, 329-15, 329-16, 329-17, 329-18.) Pursuant to the Court's May 4, 2026 Order, any such materials cannot now be used to support Plaintiff's arguments opposing summary judgment. (*See* Dkt. No. 316 at 8.)

Against this background and considering the complicated procedural history of this case, the undersigned finds that striking Plaintiff's sur-reply is necessary "to prevent endless reply-

[6] Although Plaintiff attempts to recharacterize her filing, it is most appropriately construed as a sur-reply. (*See generally* Dkt. Nos. 329, 331.)

briefing, enforce its sanctions order, and ensure Plaintiff does not benefit from her strategy of withholding evidence during discovery only to introduce it at summary judgment when Defendants can no longer respond," as Defendants contend. (Dkt. No. 330 at 2.) As such, Defendants' Motion to Strike (Dkt. No. 330) is **GRANTED**.[7] *See, e.g.*, *Benton v. Hester*, No. 9:24-cv-06264-DCN-MHC, 2026 WL 801380, at *7 (D.S.C. Jan. 23, 2026) (granting motion to strike a sur-reply in light of "Plaintiff's failure to seek leave to file a Sur-Reply or additional exhibits or to otherwise explain why he did not timely provide the arguments or evidence contained therein"), *adopted*, 2026 WL 801318 (D.S.C. Feb. 23, 2026); *Smalls v. Walmart Stores*, No. 3:23-cv-00088-JDA-PJG, 2024 WL 3678554, at *1 (D.S.C. July 8, 2024) (granting motion to strike sur-reply where plaintiffs did not seek leave of the court to file a sur-reply in a timely manner nor explain why they did not attach their exhibits to their original response in opposition to the motion for summary judgment), *adopted*, 2024 WL 3677844 (D.S.C. Aug. 6, 2024); *see also F.D.I.C. v. Cashion*, 720 F.3d 169, 176 (4th Cir. 2013) (finding the district court did not abuse its discretion in granting a motion to strike a sur-reply because the district's local rules made no provision for sur-replies, the reply brief did not raise a new legal theory or new evidence, and the court's decision was not inequitable). The Clerk of Court is directed to strike Plaintiff's improper sur-reply (Dkt. No. 329) and the exhibits attached thereto (Dkt. No. 329-1, 329-2, 329-3, 329-4, 329-5, 329-6, 329-7, 329-8, 329-9, 329-10, 329-11, 329-12, 329-13, 329-14, 329-15, 329-16, 329-17, 329-18) from the docket.

---

[7] It is worth noting that, regardless of this finding, the undersigned has fully reviewed Plaintiff's supplemental briefing and the evidence attached thereto, and nothing contained therein would change the recommendations contained in this Report and Recommendation if Plaintiff's impermissible filings were considered in conjunction with Defendants' summary judgment motion. (*See generally* Dkt. Nos. 329, 329-1, 329-2, 329-3, 329-4, 329-5, 329-6, 329-7, 329-8, 329-9, 329-10, 329-11, 329-12, 329-13, 329-14, 329-15, 329-16, 329-17, 329-18.)

## II. Motion for Summary Judgment

### A. Legal Standards

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact, and the movant is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In ruling on a motion for summary judgment, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "Although the Court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Anderson*, 477 U.S. at 252; *Stone v. Liberty Mutual Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is proceeding *pro se*, these standards must be applied while liberally construing her filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**B. Analysis**

Defendants argue that they are entitled to summary judgment on each of Plaintiff's claims. (*See generally* Dkt. No. 322-1.) Upon careful consideration of the parties' arguments and the record before the Court, the undersigned agrees. The undersigned therefore **RECOMMENDS** that the Court **GRANT** Defendants' motion (Dkt. No. 322) and dismiss Plaintiff's case in full.

**1. Federal Claims**

**a. Individual Liability**

At the outset, the undersigned notes that Defendants are entitled to summary judgment on Plaintiff's federal employment discrimination claims against the Individual Defendants. Indeed, it is well-settled in the Fourth Circuit that claims under Title VII and the ADEA are properly brought against an employer, and that Title VII and the ADEA do not establish individual liability for co-workers and/or supervisors. *Garrison v. Integrity Funding of Ohio*, No. 6:16-cv-307-MGL-KFM, 2016 WL 3896842, at *2 (D.S.C. June 28, 2016), *adopted*, 2016 WL 3878249 (D.S.C. July 18, 2016); *see also Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (holding, in relevant part, that Title VII and the ADEA "do not provide for causes of action against defendants in their individual capacities"); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) ("We . . . reiterate that supervisors are not liable in their individual capacities for Title VII violations."); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir. 1994) ("We therefore hold that the ADEA limits civil liability to the employer and that . . . [an] employee, is not a proper defendant

in this case."). Accordingly, Plaintiff's Title VII and ADEA claims against the Individual Defendants necessarily fail.

Section 1981—unlike Title VII and the ADEA—permits individual liability as distinct from employer liability. However, "[i]ndividual liability under Section 1981 extends only insofar as an individual's own actions cause a [S]ection 1981 violation." *Bailey v. Islands Mech. Contractor, Inc.*, 827 F. Supp. 3d 639, 655–56 (E.D.N.C. 2026) (referencing *Harriston v. Target Corp.*, No. GLR-23-2795, 2024 WL 4336093, at *5 (D. Md. Sept. 25, 2024); *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004), *aff'd*, 120 F. App'x 465 (4th Cir. 2005) (per curiam) (unpublished); *Tibbs v. Balt. City Police Dep't,* No. RDB-11-1335, 2012 WL 3655564, at *6 (D. Md. Aug. 23, 2012); *Pearsall v. Child Advocacy Comm'n of the Lower Cape Fear, Inc.*, No. 7:98-cv-200, 2000 WL 33682693, at *6 (E.D.N.C. Feb. 15, 2000) (collecting cases)). Here, Plaintiff has failed to establish a Section 1981 violation for the reasons set forth below. Accordingly, she cannot demonstrate that either of the Individual Defendants' actions *caused* any such violation. Defendants are therefore entitled to summary judgment on Plaintiff's Section 1981 claims against the Individual Defendants, as well.

**b. Title VII and Section 1981 Claims**

**i. Discrimination**

Plaintiff brings claims for race and sex discrimination under Title VII and Section 1981. (Dkt. No. 79.) Because Plaintiff's Title VII and Section 1981 discrimination claims are based on the same underlying facts and share an identical legal framework, the undersigned has considered them together. (*Id.*); *see also Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required *prima facie* case [for employment discrimination] are the same."); *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133

n.7 (4th Cir. 2002) ("The required elements of a *prima facie* case of employment discrimination are the same under Title VII and Section 1981."); *McPherson v. Emp. Source, Inc.*, No. 5:23-cv-345-D, 2026 WL 917514, at *7 (E.D.N.C. Mar. 31, 2026) (recognizing "the analysis for a Title VII [] discrimination claim and [S]ection 1981 [] discrimination claim are identical").

Section 1981 provides "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

There are "two potential avenues" of proof through which a plaintiff can establish intentional discrimination under these statutes. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 n.4 (4th Cir. 2019) (referencing *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)); *see also Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (referencing *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). The plaintiff "may, under what has been referred to as the 'mixed-motive' framework, present direct or circumstantial evidence that creates a genuine issue of material fact as to whether an impermissible factor such as [race or sex] solely or partially motivated the employer's adverse employment decision." *Perkins*, 936 F.3d at 206 n.4 (referencing *Diamond*, 416 F.3d at 318); *see also Ali*, 832 F. App'x at 171 (referencing *Guessous*, 828 F.3d at 216). Where, as here, Plaintiff lacks such direct or circumstantial evidence, the plaintiff must use the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), also

known as the "pretext framework." *See Perkins*, 936 F.3d at 206 n.4 (referencing *Diamond*, 416 F.3d at 318); *see also Ali*, 832 F. App'x at 171 (referencing *Guessous*, 828 F.3d at 216).

Under the *McDonnell Douglas* paradigm, a plaintiff must first establish the elements of a *prima facie* discrimination claim. *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649 (4th Cir. 2021). Where, as here, a plaintiff alleges discrimination based on disparate treatment, the plaintiff can establish a *prima facie* case by showing: "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). If the plaintiff can make this showing, "'the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action.'" *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 256 (4th Cir. 2025) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)). If the defendant carries its burden, "the burden shifts back to [the plaintiff] to produce evidence sufficient to create a material issue of fact as to whether [the employer's] alleged reason for [the adverse action] was not its true reason, but rather a pretext for discrimination." *Wannamaker*, 126 F.4th at 257.

It is undisputed that Plaintiff is a member of a protected class and that she suffered an adverse employment action. (*See generally* Dkt. Nos. 79, 322-1, 326, 328, 329.) However, Defendants contend that Plaintiff's disparate treatment discrimination claims fail under prong two because "Plaintiff cannot show satisfactory job performance given her documented progressive discipline for workplace misconduct," and prong four because Plaintiff "cannot identify a similarly situated comparator who received more favorable treatment." (Dkt. No. 322-1 at 12.)

Assuming without deciding that Plaintiff was performing her job in a manner sufficient to sustain the second prong of a *prima facie* case of discrimination, the undersigned nonetheless finds that Plaintiff's discrimination claims fail under prong four. Although Plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim," *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)), her discrimination claims do, in fact, appear to be based solely on comparator evidence. (*See generally* Dkt. No. 79.) In any event, Plaintiff must "present evidence that reasonably creates an inference of an unlawfully discriminatory motive to shift the burden to" Defendants. *Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 573 (4th Cir. 2023); *see also Spiller-Holtzman v. Univ. of Maryland, Baltimore*, 805 F. Supp. 3d 602, 618 (D. Md. 2025), *appeal dismissed sub nom. Spiller-Holtzman v. Univ. of Maryland,* No. 25-2243, 2026 WL 1049164 (4th Cir. Mar. 5, 2026). Based on the record before the Court, Plaintiff has failed to do so.

First, as Defendants correctly note, the record indicates that Plaintiff's comparators are not similarly situated to her, undermining her disparate treatment claims. (Dkt. No. 322-1 at 12–16.) As the Fourth Circuit has noted, where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, there must be "enough common features between the individuals to allow [for] a meaningful comparison." *Haywood v. Locke*, 387 F. App'x 355, 360 (4th Cir. 2010) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). Here, neither of Plaintiff's alleged comparators share such sufficient "common features" to "allow [for] a meaningful comparison." (*Id.*)

As for Plaintiff's first comparator, Patrick Ingram, the record indicates that Ingram worked a job with duties distinct from Plaintiff's.[8] (Dkt. No. 322-1 at 24–27; Dkt. No. 322-3 at 6–7). Indeed, Plaintiff was hired as an "NDT inspector" and Ingram worked as a "lead [] inspector."[9] (Dkt. No. 322-1 at 24–27.) According to Plaintiff's deposition testimony, her job duties included performing different types of quality testing, but she did no work in "final inspection." (*Id.*) By contrast, Ingram "did have responsibilities with final inspection," which were "additional job duties that [Plaintiff] did not have." (*Id.* at 27.) As such, Ingram is not a proper comparator. *See Sherman v. Westinghouse Savannah River Co., LLP*, No. 1:00-1649-26AJ, 2004 WL 5578724, at *3 (D.S.C. Sept. 29, 2004) (finding no true comparators where the identified employees had different job responsibilities), *aff'd sub nom. Sherman v. Westinghouse Savannah River Co.*, 263 F. App'x 357 (4th Cir. 2008); *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) (rejecting comparison evidence as "too loose" because plaintiff and comparator held different job positions).[10]

Further, to the extent Plaintiff contends that she was treated differently than Ingram because she was disciplined for misconduct but Ingram was not, any such contention lacks merit, even assuming, *arguendo*, that Ingram is a proper comparator. Indeed, Plaintiff admits that this theory of disparate treatment is based on nothing more than "favoritism" and Plaintiff's subjective

---

[8] Despite the record evidence indicating that Ingram worked a job with additional duties beyond those assigned to Plaintiff, the record shows that Plaintiff and Ingram earned the same hourly wage throughout the relevant period. (Dkt. No. 322-1 at 24–27, 55; Dkt. No. 322-9 at 6–7.)

[9] To the extent Plaintiff claims that Ingram was not initially hired as "lead inspector," the record belies this unsupported belief. (*See, e.g.*, Dkt. No. 322-9 at 6–7, indicating Ingram was hired in June of 2022 as "Inspector, Lead".)

[10] What is more, any contention that Plaintiff was deprived of an opportunity to apply for Ingram's position is undermined by record evidence showing that the "lead inspector" position was "post[ed] [] on the website," but Plaintiff never applied for it. (Dkt. No. 322-2 at 26; Dkt. No. 322-3 at 4.) Similarly, any contention that Plaintiff was deprived of training opportunities offered to Ingram because of her race and/or sex are undermined by Plaintiff's own allegations and evidence. (*See, e.g.*, Dkt. No. 326-5 at 2, explaining that Plaintiff was offered an opportunity to "cross-train" so that she would be eligible to "develop and get bumped up into a lead paygrade," but she declined; Dkt. No. 327-2 at 12, stating that Plaintiff and Joe Couillard, a "white male," were not given a response when they asked when they would be given a "practical exam" after completing the "UT certification exam.")

belief that Ingram should have been reprimanded for not carrying his weight. (Dkt. No. 322-2 at 31.) However, favoritism, without more, cannot sustain a disparate treatment claim, nor can Plaintiff's own subjective beliefs that Ingram was bad at his job. *See Holder v. City of Raleigh*, 867 F.2d 823, 825–26 (4th Cir. 1989) ("To hold that favoritism . . . is per se violative of Title VII would be, in effect, to rewrite federal law."); *Jones v. Cecil Cnty., Maryland*, No. CV RDB-23-2076, 2024 WL 1329269, at *4 (D. Md. Mar. 28, 2024) (explaining that "favoritism . . . is not an actionable violation without the existence of improper discriminatory intent"); *Scott v. Cnty. of Orangeburg*, No. 5:07-3571-MBS, 2009 WL 2970145, at *12 (D.S.C. Sept. 14, 2009) ("An adverse employment decision motivated by a non-merit based reason—such as friendship, nepotism, or romantic relationship—is not protected under Title VII."); *Mayers v. Shaw Indus.*, No. 3:09-cv-2635-MBS-JRM, 2012 WL 1067663, at *4–6 (D.S.C. Mar. 29, 2012) (finding that plaintiff could not establish *prima facie* case of discrimination where disparate treatment was based on favoritism).

Plaintiff's allegations regarding her second comparator, Brian Fogarty, are also insufficient to support her *prima facie* case of disparate treatment. *See, e.g.*, *Tabor v. Freightliner of Cleveland, LLC,* 2009 WL 1175329 (M.D.N.C.2009) ("[a] showing of disparate discipline 'usually requires direct comparisons in order to raise a presumption that Defendant's disparate treatment stemmed from Plaintiff's [sex or race] rather than [] actions alone'") (citation omitted), *aff'd,* 388 F. App'x. 321 (4th Cir. 2010). As described above, Plaintiff alleges that Fogarty was not disciplined after yelling and "violently point[ing] his finger" at her. (Dkt. No. 79 at ¶ 37.) To the extent Plaintiff attempts to base her discrimination claim on an alleged disparity in disciplinary actions taken against her and Fogarty, the record does not support this claim. The record reveals that Fogarty was, in fact, disciplined following this alleged encounter with Plaintiff—Fogarty was given an

"informal discussion" regarding this incident because it was his first offense. (Dkt. No. 322-6 at 43; Dkt. No. 326-6 at 2.) Plaintiff also received an "informal discussion" following her first disciplinary offense, which was an equal disciplinary action according to Defendant Curtiss-Wright's progressive disciplinary process. (Dkt. No. 322-6 at 16–17, 54; Dkt No. 327-7 at 2.) Thus, Plaintiff cannot satisfy the fourth prong of her *prima facie* case of disparate treatment discrimination through allegedly "favorable treatment" given to Fogarty.[11]

Ultimately, the record is devoid of any admissible evidence demonstrating that Plaintiff was treated less favorably than Ingram or Fogarty on account of her sex and/or race, or that she was otherwise deprived of opportunities or subjected to adverse action on account of her sex and/or race, and Plaintiff has proffered no other discernible arguments or admissible evidence that might support an inference of sexual or racial discrimination. (*See generally* Dkt. Nos. 79, 322-2, 326.) For example, she has identified no other similarly situated employees outside of her protected classes who were treated more favorably; she has admitted to the conduct underlying her disciplinary reprimands; and she concedes that no one at Curtiss-Wright ever mentioned her race in connection with her disciplinary reprimands. (*See generally* Dkt. Nos. 322-2, 326; *see also* Dkt. No. 322-2 at 55.) In fact, Plaintiff generally provides nothing more than her own personal speculation and belief in support of her discrimination claims, which is insufficient to support her claims at this juncture. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (a plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"); *Gairola*, 753 F.2d at 1288, n. 4 (noting that an employment discrimination claim is subject to dismissal where it "is based on unfounded conjecture . . . that [the plaintiff's]

[11] Because the undersigned finds that any attempted discrimination claim based upon favorable treatment afforded to Brian Fogarty would fail for this reason, the undersigned declines to address Defendants' timeliness argument as to the same. (*See* Dkt. No. 322-1 at 15–16.)

disfavorable treatment was the result of discrimination . . . ."); *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir. 1980) (explaining "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff"); *see also Stultz v. Ponder*, No. 503-cv-646-BO, 2006 WL 4726724, at *4 (E.D.N.C. Mar. 30, 2006) ("Not only is a subjective belief an insufficient defense to a summary judgment motion, but in this case, that subjective belief is refuted by the undisputed record evidence . . . . Plaintiff's mere status as a fifty-year old, African-American woman will not suffice to carry her complaint past summary judgment in the absence of any showing of discriminatory intent or effect."). By contrast, Defendants have provided evidence suggesting that Plaintiff was disciplined in accordance with a progressive disciplinary process and terminated following a multi-level review process requiring several levels of review and/or approval. (Dkt. No. 322-6 at 19–23.)

At base, the overall record suggests that any allegedly "unfair" treatment Plaintiff experienced resulted from personality conflicts and difference of opinion, as opposed to intentional discrimination on the basis of a protected characteristic. *See, e.g.*, *de Patricio v. Towson Univ.*, No. CV 22-01454-BAH, 2024 WL 3861024, at *17 (D. Md. Aug. 19, 2024) (noting that "Title VII does not outlaw personality conflicts or even rude and unbecoming behavior"); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting Title VII is not "a general civility code for the American workplace"); *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII." (internal citations and quotation marks omitted)).

Against this background, Plaintiff cannot establish a *prima facie* case of discrimination,[12] and Defendants are therefore entitled to summary judgment on Plaintiff's federal discrimination claims.

**ii. Hostile Work Environment**

Plaintiff's hostile work environment claim, which is reviewed under the familiar *McDonnell-Douglas* framework, similarly fails. "A hostile environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). To establish a claim for a racially or sexually hostile work environment, Plaintiff must show (1) unwelcome conduct; (2) that is based on her race or sex; (3) which is sufficiently severe or pervasive to alter their conditions of employment and to create an abusive work environment; and (4) which is imputable to her employer. *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018).

As a threshold matter, Plaintiff has failed to produce evidence that she was subjected to an allegedly hostile work environment based on a protected characteristic. Indeed, to satisfy the second element of her attempted hostile work environment claim, Plaintiff must show that "but for" her race or sex, she would not have been the victim of the harassment. *See Anderson v. Boeing Co.*, No. 2:17-cv-00891-BHH-MGB, 2018 WL 8263057, at *9 (D.S.C. Nov. 19, 2018), *adopted*,

---

[12] For many of the same reasons she cannot establish a *prima facie* case of discrimination and for many of the reasons set forth in Section B.1.b.iii. below, Plaintiff also cannot show pretext. *See Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 275 (4th Cir. 1995) ("Despite the minutiae of the various proof schemes set forth in *McDonnell Douglas*, . . . the straightforward question to be answered in discrimination cases is whether the plaintiff has successfully demonstrated that she was the victim of [] discrimination on the part of the employer." (internal quotation marks and citation omitted).

2019 WL 1253231 (D.S.C. Mar. 19, 2019) (referencing *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 424 (D.S.C. 2014)). Here, Plaintiff's allegations of discriminatory animus are based strictly on Plaintiff's personal opinion and conjecture, neither of which are sufficient to establish a hostile work environment claim. (*See generally* Dkt. Nos. 79, 322-2, 326); *see also Anderson*, 2018 WL 8263057, at *9 (finding that plaintiff's own self-serving and conclusory inferences are not sufficient to demonstrate that race had anything to do with the toxic environment to which she testified); *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 566 (D.S.C. 2013) (explaining that there must be some sort of "independent evidence of racial animosity" to establish an unlawful hostile work environment). Indeed, as noted above, the record is devoid of evidence that Plaintiff was subjected to race-or-sex-based comments or insults. (*See, e.g.*, Dkt. No. 322-2 at 55.)

What is more, Plaintiff simply cannot substantiate an inference that she was subject to a work environment "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," even when considering the facts in the light most favorable to her. *Boyer-Liberto*, 786 F.3d at 277. In determining whether Plaintiff suffered a hostile work environment that was so severe or pervasive to bring a valid hostile work environment claim under Title VII or Section 1981, the undersigned must examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [Plaintiff's] work performance." *See Fudge v. Sentinel Office Payroll Corp.,* No. 2:13-cv-01840-CWH, 2015 WL 5682639, at *10 (D.S.C. Sept. 25, 2015) (referencing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Dufau v. Price*, 703 F. App'x 164, 166 (4th Cir. 2017).

It is well-established that "incidents that would objectively give rise to bruised or wounded feelings" do not, without more, satisfy the severe and pervasive standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

In this instance, Plaintiff's hostile work environment claim appears to be based on alleged favoritism towards Patrick Ingram, an incident involving Brian Fogarty, and issues with her complaints to Human Resources.[13] (*See generally* Dkt. Nos. 79, 326.) With respect to Plaintiff's issues with alleged delays and/or mishandling of her complaints and alleged favoritism towards Patrick Ingram, these events cannot reasonably be described as sufficiently frequent, physically threatening or humiliating such that they can form the basis of Plaintiff's hostile work environment claim. *Perkins*, 936 F.3d at 209. Further, Plaintiff does not allege that these events actually interfered with her ability to perform her job. *See id.* (finding that plaintiff failed to allege requisite level of severity and pervasiveness required for hostile work environment claim where he did not allege that the incidents at issue interfered with his ability to perform his job). Moreover, the Fourth Circuit has consistently held that the type of treatment Plaintiff alleges does not rise to the level of severe and pervasive conduct required to substantiate a hostile work environment claim. *See*, *e.g.*, *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (noting that complaints premised on nothing more than "rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors" do not establish a hostile work environment); *Combs-Burge v. Rumsfeld*, 170 F. App'x 856, 862 (4th Cir. 2006) (concluding that employee's criticism, micromanaging, and nitpicking of plaintiff were not sufficient to sustain hostile work environment claim, even where supervisor was more friendly to white employees); *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (finding that unpleasant working

---

13 Plaintiff appears to have abandoned any claim based on alleged harassment by "an Executive Assistant." (Dkt. No. 79 at ¶ 34.) To the extent she did not so intend, any such claim is time-barred. (*See infra* at Section B.1.c.)

conditions are not so intolerable as to compel a reasonable person to resign) (internal citations omitted).

Additionally, Plaintiff cannot use her isolated encounter with Fogarty to sustain her hostile work environment claims. Although Fogarty allegedly yelled at Plaintiff and pointed his finger at her, the record evidence plainly indicates that this singular incident did not rise to the level of extreme conduct necessary to support a hostile work environment claim, even when considered in the light most favorable to Plaintiff and in combination with the other purportedly harassing events alleged.[14] (*See generally* Dkt. Nos. 79, 322-2, 326); *see also Holloway v. State*, 32 F.4th 293, 299-301 (4th Cir. 2022) (affirming dismissal of hostile work environment claim where supervisor undermined plaintiff's leadership, yelled at plaintiff during meetings, and required plaintiff to address him as "sir"); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (no hostile work environment despite one occasion when supervisor "yelled at Plaintiff, told her she was incompetent, pushed her down in her chair, and blocked the door to prevent Plaintiff from leaving while he continued to yell at her"); *Witherspoon v. Brennan*, 449 F. Supp. 3d 491, 505 (D. Md. 2020) ("A single isolated incident of harsh words exchanged during a work-related argument, alone or in combination with the other record evidence, does not support that Witherspoon suffered a workplace permeated with discriminatory intimidation, ridicule or insult.").

For these reasons, Plaintiff's hostile work environment claim cannot survive summary judgment. Defendants' motion (Dkt. No. 322) should therefore be **GRANTED** as to this claim.

---

[14] Even assuming, *arguendo*, that Plaintiff's isolated encounter with Fogarty could support a hostile work environment claim, the record shows that Fogarty was disciplined for this incident. (Dkt. No. 322-6 at 43.) As such, Plaintiff's claims would fail under the fourth prong because an employer is typically only liable for harassment by a non-supervisory coworker if the employer knew of the harassment but failed to take remedial action. *See Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006).

**iii. Retaliation**

Plaintiff's retaliation claim—again reviewed under the familiar pretext framework—fails for many of the same reasons. Similar to her discrimination claims, Plaintiff must first make a *prima facie* showing of retaliation by proving that: (1) she engaged in a protected activity; (2) her employer took a materially adverse action against her; and (3) there was a causal link between the two events. *Perkins*, 936 F.3d at 213. If Plaintiff can establish a *prima facie* case of Title VII retaliation, the burden shifts to Defendants to rebut the presumption of retaliation by articulating a non-retaliatory reason for the alleged adverse actions. *Marzett v. Charleston Cty. Sch. Dist.*, No. 2:14-cv-3932-RMG-MGB, 2017 WL 1274254, at *10 (D.S.C. Jan. 27, 2017), *adopted*, 2017 WL 589110 (D.S.C. Feb. 14, 2017), *aff'd*, 697 F. App'x 186 (4th Cir. 2017) (referencing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998)). Plaintiff then bears the ultimate burden of proving that the proffered reasons are pretext for unlawful retaliation. *Id.*

At the outset, Plaintiff cannot base her retaliation claims on alleged issues with her "printing capabilities" and/or "work hours" because these incidents do not qualify as adverse actions. It is well-settled that adverse actions in the retaliation context are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006), but "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68. Here, the record reveals that Plaintiff's printing and timecard issues were nothing more than routine "minor annoyances" unconnected to any alleged protected activity. (Dkt. No. 322-2 at 45–48; Dkt. No. 322-6 at 32–33; Dkt. No. 322-8 at 3–6.)

First, the record reveals that Plaintiff experienced printing issues as a result of a network issue that other users also experienced. (*See generally* Dkt. No. 322-8.) Nothing in the record (other than Plaintiff's own speculation) indicates that Plaintiff's printing issues were related to her protected complaints. (*See, e.g.*, Dkt. No. 322-2 at 48; Dkt. No. 322-6 at 32–33.) Further, the record indicates that Plaintiff's issues with her "work hours" involved her being credited for more hours than she actually worked. (Dkt. No. 322-2 at 45.) When Plaintiff reached out about the discrepancy, her timecard was corrected and the discrepancy was investigated, at Plaintiff's request. (*Id*. at 45–48.) Again, nothing in the record (beyond Plaintiff's own conjecture) indicates that Plaintiff being credited for additional hours worked was related to her protected complaints. (*See id*.) As such, Plaintiff's printing issues and timecard adjustment cannot be used to establish a *prima faci*e case of retaliation.[15]

Assuming without deciding that Plaintiff can establish a *prima facie* case of retaliation based on her disciplinary reprimands and termination, any such retaliation claims would nonetheless fail because Plaintiff cannot show that Defendants' proffered non-retaliatory reasons for these adverse actions are pretextual. Indeed, Plaintiff spends much time attempting to connect her disciplinary reprimands to some kind of retaliatory animus without presenting any admissible evidence from which this Court could infer such animus. (*See generally* Dkt. Nos. 79, 322-2, 326.)

With respect to the disciplinary reprimand Plaintiff received in July of 2023, Defendants contend that this resulted from a meeting in which Plaintiff called Patrick Ingram a liar. (Dkt. No. 322-1 at 25.) During her deposition, Plaintiff did not contest this. (Dkt. No. 322-2 at 31–33.) Plaintiff similarly did not contest that her September 2023 disciplinary reprimand followed an

---

[15] Because the undersigned finds that any attempted retaliation claims based upon Plaintiff's printing issues or timecard adjustments fail on this basis, the undersigned need not address Defendants' argument regarding the timeliness of such claims. (*See* Dkt. No. 322-1 at 24.)

email she sent to Defendant Curtiss-Wright's Human Resources Department in which she stated: "your excuses are BS." (*Id*. at 33.) Plaintiff further admitted that the disciplinary reprimand she received in November 2023 followed a phone conversation in which she told a Human Resources representative "that's some f***ing bull****" and hung up the phone after he explained the eligibility requirements for short-term disability benefits, and another phone conversation during which she hung up on a different Human Resources representative. (*Id*. at 37–39.) Plaintiff also admitted that she was told "another instance of unprofessionalism" could "lead to further disciplinary action." (*Id*. at 39.) Nonetheless, Plaintiff conceded that she entered Defendant Lanier's office later that day, going "right up to her desk and yell[ing] at her," saying she had lied and waving a paper in front of her face. (*Id*.) According to Plaintiff's deposition testimony, she left the office, and then Defendant Sablotsky and another employee approached her in the "the shop" a few minutes later. (*Id*. at 39–40.) They reminded her that she was "told if there were any more instances, [she] would have further disciplinary action," and escorted her out of the building. (*Id*. at 40.) Plaintiff was suspended pending investigation and was later terminated. (*Id*. at 40–42.)

Plaintiff clearly disagrees with disciplinary actions taken against her and believes they were unfair.[16] (*See generally* Dkt. Nos. 79, 322-2, 326.) However, as noted above, Plaintiff repeatedly relies on her own speculation and belief to support her claims. In the pretext context, "the Fourth Circuit has explained on a number of occasions, [that] '[i]t is the perception of the decisionmaker which is relevant,' when considering whether the employer's legitimate nondiscriminatory reason for acting adversely against the plaintiff is credible." *See Croft v. City of Roanoke*, 862 F. Supp. 2d 487, 497 (W.D. Va. 2012), *aff'd sub nom.*, 506 F. App'x 218 (4th Cir. 2013) (citing *Holland v.*

[16] To the extent Plaintiff contends that Defendants "falsified" certain of her disciplinary records and reports, she provides no evidence of this beyond her own speculation and belief. (*See generally* Dkt. No. 322-2.) Regardless, as noted, Plaintiff admits to many, if not all, of the actions underlying her disciplinary reprimands. (*See supra* at 30–31.)

*Wash. Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007)). Thus, Plaintiff must show that the decisionmaker responsible for each allegedly retaliatory act did not genuinely believe the reasons behind his or her actions. *See Holland*, 487 F.3d at 217–18 (finding that no reasonable juror could conclude the decisionmaker's reason was pretextual where plaintiff's evidence failed to address whether the decisionmaker "did not honestly believe" that plaintiff engaged in the alleged misconduct); *Addison*, 47 F. Supp. 3d at 420 (finding that even if defendant relied on unfair or inaccurate information, plaintiff still failed to demonstrate that defendant did not genuinely believe plaintiff failed to meet company's legitimate expectations at the time of adverse action). Based on the record before the Court, Plaintiff has no such evidence.

Moreover, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory." *Malghan v. Evans*, 118 F. App'x. 731 (4th Cir. 2004). Thus, while Plaintiff may disagree with her employer's decisions, her own disagreement is insufficient to show pretext, particularly where, as here, she does not contest the events underlying the adverse actions at issue. (*See generally* Dkt. Nos. 79, 322-2, 326.)

The fairness of Plaintiff's disciplinary reprimands and, ultimately, her termination, is not relevant to the pretext inquiry. Rather, "[an employer's] failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext." *Addison*, 47 F. Supp. 3d at 421; *see also Duggan v. Sisters of Charity Providence Hosps.*, 663 F. Supp. 2d 456, 470 n.6 (D.S.C. 2009) (rejecting plaintiff's attempt to establish pretext by pointing out that the defendant rushed to judgment and failed to interview plaintiff before acting adversely). Federal discrimination statutes are not vehicles for "substituting the judgment of a court for that of the employer." *Thompson v. Rock Hill Sch. Dist. III*, No. 0:13-cv-01889-JFA,

2014 WL 5369775, at *12 (D.S.C. Oct. 22, 2014) (citing *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995)). Thus, even if Plaintiff's conduct was misinterpreted, it is not this Court's place to decide whether the proffered reasons for the adverse employment decisions were "wise, fair, or even correct, ultimately, so long as it truly was the reason . . . ." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Because Plaintiff has failed to present any admissible evidence from which this Court might infer that intentional discrimination or retaliation was the "but for" reason for the adverse actions she alleges, the undersigned must recommend that Defendants are entitled to summary judgment on Plaintiff's retaliation claims, as well. *See Williams v. TWC Admin. LLC*, No. 3:16-cv-3902-CMC, 2019 WL 181292, at *3 (D.S.C. Jan. 14, 2019) (reiterating that a plaintiff cannot demonstrate pretext "by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it").

**c. ADEA Claims**

The ADEA protects individuals over the age of forty from workplace age discrimination. 29 U.S.C. § 631(a). In other words, the ADEA prohibits employers from "fail[ing] or refus[ing] to hire or [] discharg[ing] . . . or otherwise discriminat[ing] against any individual" because of his or her age. *Id.* § 623(a)(1). Plaintiff brings discrimination and retaliation claims under this statute. (Dkt. No. 79.) Defendants contend that Plaintiff's ADEA claims are procedurally barred because they were not timely filed. (Dkt. No. 322-1 at 19.) The undersigned considers this argument, below.

Before filing a Title VII or ADEA claim, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC or, in a "deferral" jurisdiction such as South Carolina, with an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred." 42 U.S.C. §§ 2000e–5(e)(1), 2000e–5(f)(1); 29 U.S.C.

§ 626(d). Thus, there are "two possible limitation periods for filing a discrimination charge: 'the basic limitations period is 180 days after the alleged unlawful employment practice but can be extended to 300 days in a deferral state if state law proscribes the alleged employment practice and the charge is first filed with a state deferral agency.'" *Marquez v. Winn Mgmt. Grp., LLC*, No. 9:23-cv-05045-RMG-MHC, 2024 WL 1251423, at *2 (D.S.C. Mar. 5, 2024) (quoting *Gerald v. Olsten*, No. 4:20-cv-2555-CMC-KDW, 2021 WL 1394669, at *2 (D.S.C. Feb. 9, 2021) (cleaned up), *adopted*, 2021 WL 960509 (D.S.C. Mar. 15, 2021)), *adopted*, 2024 WL 1251318 (D.S.C. Mar. 22, 2024).

After bringing a charge with the EEOC, the claimant must then file a civil action within ninety days of the date of her receipt of a duly issued notice of right to sue. *See* 42 U.S.C. § 2000e–5(f)(1); 29 U.S.C. § 626(e). If suit is not brought within the statutory period, the case is subject to dismissal unless equitable tolling applies. *See Dixon v. Digit. Equip. Corp.*, 976 F.2d 725 (4th Cir. 1992) (Table) (dismissing suit and rejecting equitable tolling where *pro se* plaintiff filed suit one day late); *Harvey v. City of New Bern Police Dept.*, 813 F.2d 652, 653 (4th Cir. 1993) (noting that "district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period").

Here, it is undisputed that Plaintiff filed three charges with the EEOC prior to filing the instant civil action. Plaintiff filed her first charge with the EEOC on May 31, 2023, alleging workplace harassment, sex discrimination, and race discrimination based on the May 19, 2023 incident with Fogarty. (Dkt. No. 79 at ¶ 39.) The EEOC issued the right to sue regarding this charge on June 5, 2023, but Plaintiff claims she did not file a cause of action with the Court for fear of retaliation. (*Id.* at ¶ 40.) Plaintiff filed her second charge with the EEOC on October 5, 2023. (*Id.* at ¶ 56.) The second charge alleged that she was subjected to workplace harassment on May 19,

2023, when Fogarty yelled at her and repeatedly waved his finger in her face after becoming upset at her for not checking a QPC Code. (*Id.*) The second charge further alleged that after Plaintiff filed a complaint of discrimination, she was subjected to retaliation when her printing capabilities were disabled multiple times and when her work hours were adjusted without her knowledge. (*Id.*) Plaintiff alleged discrimination based on sex and race. (*Id.*) The EEOC issued a right to sue regarding this charge on October 6, 2023. (*Id.* at ¶ 57.) Plaintiff did not file a civil action within ninety days of receiving the right to sue letter regarding her second charge.

On May 2, 2024, Plaintiff filed her third charge of discrimination with the EEOC, alleging retaliation and race and sex discrimination from December 6, 2022, through November 21, 2023. (*Id.* at ¶¶ 25–26.) The EEOC issued a right to sue letter regarding this charge on November 19, 2024. (*Id.* at ¶ 28.) Plaintiff filed the instant civil action on December 17, 2024, less than ninety days after receiving the EEOC's right to sue letter for her third charge. (Dkt. Nos. 1, 1-1.)

Defendants claim that Plaintiff's ADEA claim should be dismissed as untimely because it was not included in her third EEOC charge. (Dkt. No. 322-1 at 19.) The undersigned agrees. As Defendants correctly note, the only EEOC charge on which Plaintiff timely filed suit is her third. Although Plaintiff's third EEOC charge included claims for race and sex discrimination and retaliation, the Charge makes no reference to age-related claims. (*See generally* Dkt. No. 322-11; *see also* Dkt. No. 327-21 at 4.) Thus, Plaintiff's ADEA claims are time-barred. What is more, the record properly before the Court includes no evidence or circumstances indicating that equitable tolling is warranted such that Plaintiff's failure to timely file her ADEA claims should be excused. *See Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (en banc) (noting that equitable tolling is available only in rare instances where it would be unconscionable to enforce the limitation period against

the party and gross injustice would result). The undersigned therefore recommends that Defendants are entitled to summary judgment on Plaintiff's ADEA claims, as well.

**d. Title VI Claim**

Title VI provides that, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Thus, a valid Title VI claim requires a showing that: "(1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin." *Lucas v. VHC Health*, No. 24-1128, 2025 WL 395728, at *5 (4th Cir. Feb. 5, 2025) (quoting *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-cv-01637-PX, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021)); *see also Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993) (noting that a cause of action pursuant to Title VI requires racial discrimination by an entity receiving federal financial assistance).

As Defendants correctly note, the current record is utterly devoid of any admissible evidence from which the Court might discern a genuine issue of material fact as to Plaintiff's Title VI claim. *See Vaden v. Enochs*, No. 7:21-cv-00155, 2022 WL 520804, at *4 (W.D. Va. Feb. 22, 2022) ("On summary judgment, [Plaintiff] cannot rest on unsupported statements in his brief to create a genuine dispute of fact."). More specifically, the record contains no admissible evidence to indicate that Defendant Curtiss-Wright received federal financial assistance with the primary objective of providing employment, which is a threshold criterion of the Title VI employment discrimination claim Plaintiff attempts to bring here. *See* 42 U.S.C. § 2000d-3.[17] Accordingly, Defendants are also entitled to summary judgment on Plaintiff's attempted Title VI claim.

[17] The only evidence Plaintiff submits in support of her Title VI claim pertains to a different entity, Curtiss-Wright Controls, Inc. (*See generally* Dkt. Nos. 326-11, 326-12.)

### 2. State Law Claims

Having determined that Defendants are entitled to summary judgment on each of Plaintiff's federal causes of action, the undersigned must consider whether the Court should exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Indeed, without original jurisdiction,[18] a federal court generally cannot do so. *See* 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed . . . , the state claims should be dismissed as well"); *see also Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999) ("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants."). As noted by the Fourth Circuit, "once a district court has dismissed the federal claims in an action, it maintains 'wide discretion' to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n. 4 (4th Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 353–54 (1988)).

The Supreme Court has outlined four factors to guide the exercise of that discretion: judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ.*, 484 U.S. at 350. Courts within this District have also considered: "(1) whether the claim involves straightforward application of well-defined case law," *Caughman v. S.C. Dep't of Motor Vehicles*, No. 3:09-cv-503-JFA-PJG, 2010 WL 348375, at *2 (D.S.C. Jan. 26, 2010); (2) whether the parties have completed discovery, *id.*; (3) the length of time the case has been pending in federal court, *Varner*

---

[18] The Fourth Amended Complaint alleges only federal question jurisdiction. (*See generally* Dkt. No. 79.)

*v. SERCO, Inc.*, No. 2:16-cv-2340-DCN, 2018 WL 1305426, at *4 (D.S.C. Mar. 12, 2018); and (4) whether the complaint was filed in federal court, *id.*

Considering these factors, the undersigned **RECOMMENDS** that the Court should **DECLINE** to exercise jurisdiction over Plaintiff's state law claims in light of the above recommendation that Defendants are entitled to summary judgment on Plaintiff's federal claims. This case was originally filed in state court, and it has been pending for less than two years. (Dkt. Nos. 1, 1-1.) What is more, there is no indication that proceeding in federal court is necessarily more fair or convenient to the parties. Rather, analysis of Plaintiff's remaining state law claims could be more appropriately undertaken by the state court, and concerns of comity dictate that the state court be allowed to preside over application of its own laws.

In the event the District Judge disagrees with this recommendation, the undersigned has also considered the merits of Plaintiff's state law claims. For the reasons described below, the undersigned alternatively **RECOMMENDS** that summary judgment should be granted to Defendants on Plaintiff's remaining state law claims, as well.

**a. Tortious Interference and Civil Conspiracy**

At the outset, Defendants correctly note that Plaintiff's response in opposition to their summary judgment motion contains no substantive arguments pertaining to her civil conspiracy and tortious interference claims. (*See generally* Dkt. No. 326; *see also* Dkt. No. 328 at 2.) Accordingly, Plaintiff has abandoned these claims, and they are subject to dismissal. *See, e.g.*, *Jones v. Family Health Ctr., Inc.*, 323 F. Supp. 2d 681, 690 (D.S.C. 2003) (noting that a claim not addressed in the plaintiff's opposition memorandum had been abandoned); *see also Staton v. Arcer*, No. 8:22-cv-02545-BHH-JDA, 2023 WL 5338037, at *6 (D.S.C. July 31, 2023) (noting

that *pro se* plaintiff's failure to respond to argument in defendant's summary judgment motion justified dismissal of his claim), *adopted*, 2023 WL 5333286 (D.S.C. Aug. 18, 2023).[19]

**b. Slander**

Plaintiff's slander claims also cannot withstand summary judgment. According to the Fourth Amended Complaint, Plaintiff's slander claims are based upon a "false disciplinary record" created by Defendant Lanier, and Defendant Sablotsky's allegedly false statements that Plaintiff was "combative" and "threw water on a computer." (Dkt. No. 79 at ¶ 121.)

"Slander is a spoken defamation." *Parrish v. Allison*, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007). "The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 506 (S.C. 1998) (citing Restatement (Second) of Torts § 558 (1977)). Thus, Plaintiff must establish these elements in order for her slander claims to survive summary judgment.

Defendants assert that Plaintiff cannot. (Dkt. No. 322-1 at 27–29.) More specifically, Defendants assert that the disciplinary record and verbal statements at issue are not defamatory and/or are subject to a qualified privilege. (*Id.*) The undersigned agrees.

First, the record contains no admissible evidence to show that Defendant Lanier created a "false" disciplinary record, nor that Defendant Sablotsky "falsely" told other employees that Plaintiff was "combative" and/or "threw water on a computer." (Dkt. No. 79 at ¶ 121.) Rather, the undisputed record indicates that the only "false" aspect of the disciplinary record at issue was a clerical error in the date. (Dkt. No. 322-2 at 37; Dkt. No. 322-6 at 19.) What is more, Plaintiff

[19] Regardless, the undersigned notes that Plaintiff's tortious interference and civil conspiracy claims would likely fail for the reasons set forth in Defendants' motion. (Dkt. No. 322-1 at 30–31, 32–34.)

admits that she did not hear Defendant Sablotsky make the statements at issue. (Dkt. No. 322-2 at 40–41.) Plaintiff's only evidence that the statements were made is hearsay from a co-worker, which is insufficient to defeat summary judgment. (*Id.*); *see also* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."); M*aryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgement."); *LeBlanc v. Sunset Mgmt., Inc.*, No. 3:16-cv-577-SVH, 2017 WL 2974020, at *4 (D.S.C. July 12, 2017) (noting that "inadmissible hearsay [] cannot be used as evidentiary support to defeat a summary judgment motion."). Further, Plaintiff's own testimony indicates that Defendant Sablotsky's supposed statements are not necessarily untrue, as she admits that she spilled water and acted in a manner that could reasonably be construed as "combative" during the encounter giving rise to Sablotsky's alleged statements. (Dkt. No. 322-2 at 38–41.)

Regardless, the disciplinary record and statements underlying Plaintiff's slander claims appear to be protected by a qualified privilege because such communications were related to Plaintiff's workplace discipline and communicated amongst employees in the usual course of business, and Plaintiff has provided no evidence that the communications were made in bad faith. *See Day v. Morgan*, No. 3:10-cv-454-JFA, 2011 WL 3418854, at *12 (D.S.C. May 5, 2011) ("Generally, communications between corporate officers and employees are granted qualified immunity if they are made in good faith and in the usual course of business." (referencing *Conwell v. Spur Oil Co.*, 125 S.E.2d 270, 275 (S.C. 1962)), *adopted*, 2011 WL 3418521 (D.S.C. Aug. 3, 2011), *aff'd*, 464 F. App'x 117 (4th Cir. 2012). Accordingly, Plaintiff's slander claims cannot survive summary judgment.

**CONCLUSION**

For the foregoing reasons, the undersigned **GRANTS** Defendants' Motion to Strike (Dkt. No. 330). The undersigned further **RECOMMENDS** that the Court should **GRANT** Defendants' Motion for Summary Judgment (Dkt. No. 322).

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

October 20, 2026
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).